**Arthur STEWART, Plaintiff,**

v.

**Wilbur COHEN, Secretary of Health, Education and Welfare, Defendant.**

**No. 68-C-931.**

United States District Court,
E. D. New York.

March 9, 1970.

Arthur Stewart, pro se.

Edward R. Neaher, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., for defendant; by Herbert Kramer, Asst. U. S. Atty., of counsel.

## MEMORANDUM AND ORDER

JUDD, District Judge.

Plaintiff brings this action to challenge a decision of the Secretary of Health, Education and Welfare terminating plaintiff's disability benefits under the Social Security Act. The defendant has moved for summary judgment and for an order amending the caption to reflect the appointment of Robert Finch as Secretary of the Department of Health, Education and Welfare in place of the defendant originally named.

The plaintiff, who appeared without counsel, made an oral motion for summary judgment in his favor.

Plaintiff admittedly suffered a disability of more than twelve months duration and was paid disability benefits under the Act from February, 1965 to August, 1967. The questions in the case relate to the date of termination of his disability, the effect of his having been referred for vocational rehabilitation, and the procedures adopted by the hearing examiner. The case is remanded for further consideration, for the reasons set forth below.

### 1. *Facts*

The facts are all taken from the transcript of two hearings before a hearing examiner of the Department, and the exhibits and documents contained in the record, except as noted.

Plaintiff, prior to his disability, was employed as a waiter on ocean-going vessels. On February 23, 1965 plaintiff, while aboard ship, collided with a large boiling kettle and suffered an injury to his left knee. He was treated by the

ship's physician but was unable to continue working. Subsequently he received continued treatment at a United States Public Health Service Hospital. His condition did not improve and surgery was performed on the knee on January 20, 1966.

On January 27, 1966, plaintiff filed a claim for disability benefits with the Social Security Administration. This claim was approved by the Administration on June 2, 1966.

Plaintiff was re-examined on April 20, 1967 by a doctor designated by the Bureau of Disability Determinations, and his knee was found to be improved to the extent that he could resume gainful employment. His benefits were accordingly terminated as of June 30, 1967. Plaintiff applied for reconsideration of this decision, relying on a Medical Report of Duty Status from the Public Health Service Hospital, which said that he had just become able to resume his usual occupation on June 19, 1967. The Division of Reconsideration found that his disability continued until June, 1967. Accordingly, he received benefits through August, 1967.

In June, 1967 plaintiff attempted to resume his former occupation, and signed up for a 45-day Mediterranean cruise, but the strain on his knee was too great for him to continue. The hearing examiner did not accept plaintiff's testimony concerning the daily medical care which he required during the voyage, but it is clear that his career as a sea-going waiter was ended. A medical officer at the United States Public Health Service Hospital on Staten Island reported on August 31, 1967 that plaintiff was "permanently unfit for duty at sea" because of his left knee, and recommended that he be referred to Social Services for vocational rehabilitation.

The clinical social worker at the Staten Island hospital wrote to the Intake Supervisor of the Division of Vocational Rehabilitation of the New York State Education Department on September 19, 1967 that:

"I am referring the above named 48-year old, married, forced disability retired, American Seaman for vocational advisement and other appropriate and feasible rehabilitation services."

On December 27, 1967, over three months later, the Rehabilitation Counselor wrote him that his case had been passed to her. She fixed an appointment to discuss training plans on January 11, 1968. On May 13, 1968, plaintiff was sent to Madison School of Business for vocational training.

Meanwhile, plaintiff sought a hearing to review the discontinuance of his disability benefits. A hearing was held on October 5, 1967 and the hearing examiner found that plaintiff's disability had ended on June 19, 1967 (almost three months before he was declared "permanently unfit for duty at sea") and that he was no longer disabled under the provisions of the Social Security Act, 42 U.S.C. § 423.

Plaintiff appealed this decision to the Appeals Council of the Social Security Administration on October 13, 1967 and the Appeals Council, in a letter dated December 22, 1967, granted plaintiff a re-hearing.

The Appeals Council directed the hearing examiner to call a vocational expert to testify with respect to the types of work activity for which claimant was qualified and also stated that "the hearing examiner will obtain such additional evidence as is relevant to the issues involved herein."

The re-hearing was held on June 17, 1968. The hearing examiner did not call the vocational counselor to whom the United States Public Health Service had referred the plaintiff, nor obtain any statement from her. Instead, the examiner sent the previous hearing record and documents to a Ph.D. who had not seen the plaintiff before, and asked him to testify as a vocational expert.

Plaintiff appeared without an attorney, and was offered an adjournment in order to obtain counsel, but elected to

proceed alone at the hearing. The Department was not represented by counsel, and all questioning was conducted by the hearing examiner.

The hearing examiner posed a three-page hypothetical question to the vocational expert. The hypothetical question omitted the following facts, among others:

(a) That plaintiff had tried to resume his occupation in June of 1967, but claimed to have been forced to go to the ship's hospital on every day of the voyage because of the pain which he suffered.

(b) That he was found permanently unfit for sea duty on August 31, 1967 by a doctor of the United States Public Health Service.

(c) That he had been referred by the United States Public Health Service to the Division of Vocational Rehabilitation.

(d) That the Vocational Counselor of the Division of Vocational Rehabilitation had recommended that he take instruction in the operation of business machines at the Madison School of Business.

(e) That his Continuing Disability Contact Sheet on September 6, 1967 recited that "he wanted to go back to work but the 45 days he was at sea, June–Aug. was a terrific strain. He is planning to go to the Marine Hospital in Staten Island on 9/19/67 to be trained for some other type of work." and that "He * * * appeared to be interested in working."

The vocational expert testified that plaintiff could perform the following jobs based upon the current condition of plaintiff's knee: general office clerk, mail clerk, cashier, telephone clerk, sales clerk, ticket seller, ticket taker, and various bench assembly jobs.

Claimant did not cross-examine the vocational expert, but told the examiner that when he applied for such jobs as the expert described he was given excuses why he was not qualified, that his

counselor had sent him to computer school, that he and his counselor had tried every place to find work and that he expected to be placed at the end of the training period for which he had been recommended. The hearing examiner then questioned the vocational expert about these comments, and he responded:

"'* * * As I understand it, Mr. Stewart and his counselor have been trying to find the highest level occupation possible for him, and quite correctly so, so that for the remaining years that he has to work he can have the benefit of the best possible income and the best possible salary and the best possible opportunities for advancement. * * * if however, you lower your sights and look for jobs that will simply pay an average wage then, of course, the opportunities for employment become better.'"

On the basis of this testimony the hearing examiner found that plaintiff's disability ended on June 19, 1967, and that he was not entitled to further benefits. Plaintiff again appealed to the Appeals Council, which denied his appeal. This action followed.

Plaintiff is a high school graduate and has completed two years of college. While enrolled in college, plaintiff studied to become a teacher and, in fact, received a teaching certificate from New York University, and taught for three years at the Meat-Cutting School of Manhattan until it closed. He is proficient in foreign languages and has several hobbies.

Plaintiff has not been employed since February, 1965, except for the unsuccessful experiment in the summer of 1967. There was evidence that after his disability benefits were terminated, he sought numerous teaching and clerical jobs, but to no avail.

He had been declared ineligible for a disability pension from the National Maritime Union, because of a break in service which deprived him of credit for all time prior to 1961.

During his period of unemployment, plaintiff was supported through the generosity of his friends and family. He contends that his disability benefits should have continued until he was trained in a productive skill commensurate with his education and background.

While the success of plaintiff's vocational training could not be part of the record, because he was still in training at the time of the final hearing, the Department will be able to consider such facts at the new hearing. A letter received from the plaintiff after the argument in this court recites that, although he had been turned down by Chase Manhattan Bank as unqualified when he was sent there originally by his vocational counselor, he was employed by that bank on April 24, 1969 after he had received the training which his counselor recommended in bookkeeping, accounting and operating business machines; and he was still so employed in January, 1970.

### 2. *The Applicable Statutes*

Section 223 of the Social Security Act, 42 U.S.C. § 423, is the section of the Act relating to disability benefits. "Disability" is defined in Sections 223(d) (1) (A) and 223(d) (2) (A), 42 U.S.C. §§ 423(d) (1) (A) and (d) (2) (A), as follows:

"(d) (1) The term 'disability' means —

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment * * *.

"(2) For purposes of paragraph (1) (A)—

(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but *cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work* which exists in the national economy, regardless of wheth-

er such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." (Emphasis added).

The referral of plaintiff to the Division for Vocational Rehabilitation was apparently made pursuant to Section 222 of the Social Security Act (42 U.S.C. § 422), which provides:

"Rehabilitation services—Referral for rehabilitation services

"(a) It is declared to be the policy of the Congress that disabled individuals applying for a determination of disability, * * * shall be promptly referred to the State agency or agencies administering or supervising the administration of the State plan approved under the Vocational Rehabilitation Act for necessary vocational rehabilitation services, to the end that the maximum number of such individuals may be rehabilitated into productive activity.

"(b) (1) Deductions, in such amounts and at such time or times as the Secretary shall determine, shall be made from any payment or payments under this subchapter to which an individual is entitled, until the total of such deductions equals such individual's benefit or benefits under sections 402 and 423 of this title for any month in which * * * an individual entitled to disability insurance benefits, refuses without good cause to accept rehabilitation services available to him under a State plan approved under the Vocational Rehabilitation Act. * * *

"(c) (2) For purposes of sections 416(i) and 423 of this title, any services rendered by an individual during a period of trial work shall be deemed not to have been rendered by such individual in determining whether his disability has ceased in a month during such period. * * *"

In reviewing the record in this case, the court must consider not only the

provisions of the Social Security Act, but also the limits on judicial review in the Administrative Procedure Act. That Act provides (5 U.S.C. § 706):

"§ 706. *Scope of review*

"To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

\*　\*　\*　\*　\*　\*

"(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

"(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

\*　\*　\*　\*　\*　\*

"(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

"(D) without observance of procedure required by law;

"(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute;

\*　\*　\*　\*　\*　\*

"In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error."

### 3. *Disability under the Statutory Definition*

There was substantial evidence that plaintiff's disability had terminated to the extent that he was able to perform some gainful employment, but the standards of judgment as to what constitutes "substantial gainful activity" may have been "short of statutory right." 5 U.S.C. § 706(2) (C). We need not rest the decision on this point, since the hearing was procedurally defective in any event.

It is sufficient to discuss the question of legislative intent for the guidance of the Department at the next hearing.

Section 223(d) (2) (A) of the Act was added by an amendment in January, 1968. P.L. 90–248, 81 Stat. 821. The stated purpose of this amendment was to provide new guidelines for definition of the word "disability" in order to counteract a large increase in the number of persons being found eligible for benefits under court decisions. S.Rep.No.744, 90th Cong. 1st Sess., 1967 U.S.Code Cong. & Ad.News, pp. 2834 at 2880–2883. Congress feared that the continuing influx of people onto the disability rolls placed the fund in financial jeopardy, since the rate of increase exceeded actuarial projections.

■ Nevertheless, nothing in the 1968 Act suggests a Congressional purpose to ignore the basic purpose of the Social Security Act, the protection of our people from economic destitution and resort to charity as a result of a disabling accident or illness. See Gardner v. Smith, 368 F.2d 77, 84–85 (5th Cir. 1967).

Furthermore, it is still necessary after the 1968 amendment to construe the Act as a whole. In several different respects the report of the hearing examiner fails to show that he has done so:

(a) The record does not show any consideration of Section 222 of the Act (42 U.S.C. § 422), which requires a disabled person to accept rehabilitation services provided under the Vocational Rehabilitation Act, under penalty of having his disability payments terminated. Here, the acceptance of rehabilitation services was treated by the hearing examiner as being also a ground for terminating disability payments. He commented on the fact that the plaintiff was able to use public transportation in attending classes for vocational rehabilitation. If plaintiff had refused to attend the classes, he would have lost his disability payments on that account. Having complied with the suggestion of his vocational counselor to attend the classes, his doing so is nevertheless cited

as a reason for terminating the payments. In short, HEW takes away with one hand what it has offered with the other. Since the effect of Section 222 was not argued before, the court will not direct that the claim be allowed, but will leave the point for the Secretary to consider after remand.

(b) The difference between an initial finding of disability and a termination of an existing disability was not expressly considered. The problem relating to termination of disability is far different from that faced by Congress when it enacted P.L. 90–248. No threat to the solvency of the disability fund is posed by allowing an individual in plaintiff's circumstances to recover the continued disability benefits claimed here. Plaintiff is not seeking a lifetime of benefits. On the contrary, he seeks benefits only for a limited period of time, time he needed to re-train himself so that he could resume productive employment. Similarly, the number of people who are found to be disabled and subsequently recover to the stage that they can once more be employed is small under the definition established by Congress.

■ (c) Another portion of the Act was not considered in holding that Section 223(d) (2) (A) precludes plaintiff from recovering. The key phrase of that section for the purposes of this case is:

"that he is not only unable to do his previous work but cannot, considering his *age, education,* and *work experience* engage in any other kind of *substantial* gainful employment." (Emphasis added).

A person need not be unable to do *any* kind of work before he is qualified for benefits under this definition. Wallace v. Finch, 303 F.Supp. 351 (W.D.Ark. 1969). He must be unable to do any *substantial* work, considering the factors listed.

■ Thus, an individualized standard has been established by Congress and the facts of each case must be scrutinized before deciding that a person is capable of doing substantial gainful employment. What may be substantial gainful employment for an individual with one combination of age, education and work experience, may not be the same for another. Blanscet v. Ribicoff, 201 F.Supp. 257, 261–265 (W.D.Ark. 1962).

The vocational expert called by the hearing examiner seemed to think that disability benefits should stop for a person who can earn an "average wage" at a new job even though he could obtain a better salary and better opportunities for advancement by using the vocational training provided under the Social Security Act. The validity of this assumption was not discussed in the hearing examiner's report.

■ Congress having inserted the adjective "substantial" before the phrase "gainful employment," we cannot presume that the bare existence of some jobs in the national economy is enough to disqualify an individual from benefits if he is not yet able to hold a "substantial" job.

Plaintiff contends that low-paid jobs requiring little or no skill are not substantial for a person with a college background. There is much to be said for plaintiff's position. If a small investment of time and disability payments is all that is necessary to place an educated individual in a substantial job, the price is indeed small as compared with forcing such a person to take a job which is not commensurate with his education and background.

■ Defining "substantial" to encompass jobs that are commensurate with a person's age, education, and work experience, if at all practicable, is entirely consistent with the overriding purpose of the Social Security Act.

Since this point was apparently not weighed by the Department, we again do not use it as a basis for directing that the claim be allowed, but leave its application to the facts to be considered after remand.

(d) No consideration was given to plaintiff's right to "vocational rehabili-

tation services" as a "handicapped individual" under the Vocational Rehabilitation Act. 29 U.S.C. § 41. The term "vocational rehabilitation services" includes the right to "maintenance, not exceeding the estimated cost of subsistence, during rehabilitation." 29 U.S.C. § 41(a) (2) (B).

Being required to wear a knee-brace because of an injury sustained in the course of his employment, plaintiff might have been entitled to benefits under the Vocational Rehabilitation Act even if he were technically disqualified for benefits under the disability provisions of the Social Security Act. It seems unfair to deny continuance of his disability payments under one statute without considering his right to similar payments under another statute. The Secretary of Health, Education and Welfare is Chairman of the National Advisory Council of Vocational Rehabilitation, and has a responsibility for the proper administration of that Act.

(e) The hearing examiner devoted a substantial portion of his original report to the fact that plaintiff had endeavored to work for 45 days during the summer of 1967, after his disability benefits started. He gave no consideration to the provisions of Section 222 which forbid using a "period of trial work" to support a determination that disability has ceased. 42 U.S.C. § 422(c) (2).

■ It is still true that the Social Security Act is a remedial statute, to be broadly considered and liberally applied. Haberman v. Finch, 418 F.2d 664 (2d Cir. 1969).

Disability claimants are entitled to expect better coordination of the several units in the Department of Health, Education and Welfare than is demonstrated by the record in this case.

### 4. *The Procedure Adopted by the Hearing Examiner*

■ When an individual appears without an attorney, the hearing examiner has a duty not to be a mere umpire, but to see that all relevant facts are developed. Coyle v. Gardner, 298 F.Supp.

609 (D.Hawaii 1969); Hennig v. Gardner, 276 F.Supp. 622, 625 (N.D. Texas 1967) (treating failure to explore the facts adequately as an abuse of discretion).

■ It is no answer to say, as the government does, that plaintiff should have given five days written notice of his desire to issue a subpoena to his vocational counselor. The examiner did not explain to him the extent of his rights. It was the examiner's duty to make sure that material witnesses of whom he knew were in fact called. This is generally true under Regulations No. 4 of the Social Security Administration. 20 C.F.R. § 404.1 et seq. The section relating to the conduct of hearings states in part:

"§ 404.927 Conduct of hearing

"Hearings shall be open to the parties and to such other persons as the hearing examiner deems necessary and proper. The hearing examiner shall inquire fully into the matters at issue and shall receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters. If the hearing examiner believes that there is relevant and material evidence available which has not been presented at the hearing, the hearing examiner *may* adjourn the hearing or, at any time prior to the mailing of notice of the decision, reopen the hearing for the receipt of such evidence. \* \* \*"

The examiner's duty was especially clear here where the Appeals Counsel had directed that he should "obtain such additional evidence as is relevant to the issues involved herein; \* \* \*"

■ The form of hypothetical question which the examiner used left out material facts favorable to the plaintiff, as pointed out above. Errors on evidentiary rulings are not usually grounds for upsetting an administrative determination, but the effect of the omissions here was so substantial as to make the examiner's action arbitrary and capricious. 5 U.S.C. § 706(2) (A).

It is no answer to assert, as the government does, that the vocational expert had been given the entire record. The hearing examiner's hypothetical question indicated that the only material portions of the record were those which he enumerated in the question.

### 5. *The Termination of Benefits Before Any Hearing*

On the further hearing, the Department should also consider whether it could be justified under any circumstances in terminating plaintiff's disability payments before he was granted a hearing. A three-judge District Court has held that a hearing is constitutionally required before payments to welfare recipients under the Social Security Act may be terminated. Kelly v. Wyman, 294 F.Supp. 893, 901 (S.D.N.Y.1968). Judge Feinberg stated that under the circumstances of that case,

> "due process requires an adequate hearing before termination of welfare benefits, and the fact that there is a later constitutionally fair proceeding does not alter the result."

The application of this principle to termination of disability payments has been presented in Messer v. Finch (E. D.Kentucky, #1814, filed July 10, 1969), 3 Clearing House Review, 246 (Jan. 1970), now awaiting decision on plaintiff's motion for summary judgment.

Since an appeal from the *Kelly* decision has been argued in the United States Supreme Court, and since plaintiff may obtain payment for the period up to his reemployment without constitutional issues being considered, it is not profitable for this court to decide whether Kelly v. Wyman applies to termination of disability payments.

### *Conclusion*

The motion to change the title of the action to substitute Robert Finch as defendant is granted.

Defendant's motion for summary judgment is denied.

Plaintiff's motion for summary judgment is granted to the extent of remanding the proceeding to the Secretary of Health, Education and Welfare for further proceedings not inconsistent with this opinion.