Gary A. McMILLEN, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of
Health, Education and Welfare,
Defendant.

No. 76–CV–455.

United States District Court,
N. D. New York.

Jan. 27, 1978.

Mackenzie, Smith, Lewis, Michell & Hughes, Syracuse, N. Y., for plaintiff; George R. Wolff, Syracuse, N. Y., of counsel.

Paul V. French, U. S. Atty., Syracuse, N. Y., for defendant; Joseph R. Mathews, Asst. U. S. Atty., Syracuse, N. Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

This is an action brought pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Secretary of Health, Education and Welfare,[1] denying plaintiff's applica-

---

1. Joseph A. Califano, Jr. has succeeded F. David Mathews as Secretary of Health, Education and Welfare. Therefore, the Court has substituted Joseph A. Califano, Jr. as the prop-

tion for a period of disability and disability insurance benefits. 42 U.S.C. §§ 416(i), 423. Defendant moves for a judgment on the pleadings or, in the alternative, for summary judgment. Plaintiff cross moves for summary judgment.

Plaintiff's application for disability insurance benefits was filed on March 2, 1973, alleging disability due to bad ligaments and cords in both ankles plus weakness in the upper right leg. A hearing was held before an Administrative Law Judge after plaintiff's application was denied initially and on reconsideration by the Social Security Administration. The Administrative Law Judge rendered a decision on November 3, 1975, finding that plaintiff was not disabled within the meaning of the Social Security Act. This decision was affirmed by the Appeals Counsel on October 1, 1976.

Plaintiff is thirty years old and has completed one year of college. After serving approximately four years in the Coast Guard, plaintiff went to work as a supermarket manager. While working at this job, he started falling down and injured his legs and, therefore, quit the job in early 1970, on the advice of his physician. Plaintiff then obtained leg braces and went to work as an assistant manager for a drug store. After working there for approximately four months, he left because the pay was inadequate and because he felt that he could not take the walking. Plaintiff subsequently obtained employment as a foreman in the recreation department for the City of Cortland where he did bookkeeping, kept the payroll and supervised the summer help. He left this job in September or October of 1972 to enter a hospital for corrective surgery.[2]

Plaintiff was admitted to Syracuse Veterans Administration Hospital on January 9, 1973, where his condition was diagnosed as bilateral ankle instability. His left ankle was found to open into a significant inversion, and his right ankle and right knee were found to give way occasionally causing the plaintiff to fall. On January 11, 1973, an Elmsley procedure was performed on plaintiff's left ankle. Five days later, plaintiff was discharged in a cast and on crutches. According to plaintiff's testimony, he remained in the cast until May or June and continued to use the crutches for another six to eight weeks after that.

Plaintiff was re-admitted to the Syracuse Veterans Administration Hospital on April 1, 1973. His condition was diagnosed as right ankle instability and backknee deformity of the right knee. It was decided that it would not be advisable to perform a reconstructive procedure on his right ankle at that time and he was, therefore, discharged on April 5, 1973. The hospital report upon his discharge stated that plaintiff was given a knee cage for his right knee, was placed on a diet, and would be allowed to return to work.

On June 6, 1973, plaintiff went to work for the Smith Corona Company where he did accounting, purchasing, and bookkeeping work. He worked there until December 24, 1973, but testified that he missed about two and one-half months because of pneumonia and leg difficulties. He left this job because he injured his right leg when he fell and bumped into the stairs on Christmas Eve. Black spots developed on his leg and his condition was subsequently diagnosed as cellulitis.

In early January, 1974, plaintiff entered the Syracuse Veterans Administration Hospital. He was later transferred to the Buffalo Veterans Administration Hospital[3]

---

er defendant in this action. *See* Rule 25(d)(1), Fed.R.Civ.P.

2. On his application form, plaintiff stated that he became unable to work because of his disability on October 27, 1972. At the hearing, he testified that he quit work in September, 1972, but was kept on the payroll until October of that year.

3. The evidence is conflicting as to the date plaintiff was transferred to the Buffalo Veterans Administration Hospital. A hospital summary report completed by Dr. Turner indicates that plaintiff's admission date at this hospital was April 4, 1974, while a memorandum completed by Dr. Ungerer indicates that the admission date was February 4, 1974.

where his condition was diagnosed as right ankle instability, malocclusion and inadequate occlusion, and a possible pituitary tumor. A Watson-Jones procedure was tentatively scheduled, but the surgery was cancelled after a pituitary tumor was ruled out. Plaintiff was, therefore, discharged on May 20, 1974, but was re-admitted to the same hospital on June 9, 1974. On June 11, 1974, an Evans reconstruction was performed on plaintiff's right ankle. He was discharged on crutches on June 14, 1974, in good condition, but the hospital summary report stated that plaintiff was not employable at that time. A memorandum from Dr. Ungerer, dated June 26, 1974 said that the plaintiff was still disabled and that his employability date was not yet determined.

Plaintiff testified that he was not released for work by Dr. Ungerer until December 2, 1974. He also said that he had oral surgery performed at the Cortland Hospital on December 8, 1974, and was not released by the oral surgeon until December 17, 1974. The Administrative Law Judge noted, in his decision, that there is no medical evidence in the record to substantiate these release dates.

On December 17, 1974, plaintiff returned to work as an assembly line worker at Smith Corona, but was dissatisfied with this job since it was harder work and paid less than his former position with the company. He quit on August 1, 1975, because the company refused to give him his old job back and because he was afraid that he would injure his leg.

Plaintiff testified that before surgery had been performed on both of his legs, he had a great deal of trouble standing or sitting, as his legs would become numb. On the other hand, he stated that, at the time of the hearing, he no longer had trouble walking on a flat even plane, but still wore a short leg brace when his leg felt badly.

Dr. Allen Speiser, a vocational expert, also testified at the hearing. He indicated that, in his opinion, the plaintiff was unable to engage in substantial gainful employment during the period of time in question. He said:

Based upon the claimant's age, educational background, previous military and civilian work experience and other testimony in the record and as presented this morning, it is my opinion that Mr. McMillen should have been able to sustain gainful employment. However, based upon the medical hospitalizations and medical complaints, continuous employment, would in my opinion, be difficult to maintain. So, that I would say in the final analysis, during the period of record, that although there are jobs in the economy that the claimant could fulfill from the factors mentioned, that because of his unavailability on a continuous basis, he would not be able to maintain gainful work.

On the other hand, Dr. Speiser felt that, at the time of the hearing, the plaintiff was capable of maintaining substantial gainful employment.

The Administrative Law Judge found that the plaintiff was not entitled to Social Security disability benefits. He said:

Furthermore, it is the judgment of the Administrative Law Judge that at no time during the period from October 27, 1972, to the date of the hearing, September 5, 1975, were the claimant's impairments of such severity as to render him disabled within the meaning of the Social Security Act, as amended, inasmuch as there was no period of a year or more that he was unable to engage in substantial gainful activity such as bench assembly work which does not involve prolonges [sic] standing, walking or heavy lifting.

In order to be entitled to disability insurance benefits, the plaintiff must prove (1) that he has a medically determinable mental or physical impairment which can be expected to last for a continuous period of not less than twelve months and (2) that he is unable to engage in substantial gainful employment by reason of this impairment. 42 U.S.C. § 423(d)(1); *Hassler v. Weinberger,* 502 F.2d 172, 176 (7th Cir. 1974); *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972); *Wilson v. Weinberger,* 398 F.Supp. 1071, 1073 (E.D.Pa.1975). If the

plaintiff establishes that his impairment is so severe that he is no longer able to engage in his customary occupation, the burden shifts to the Secretary to come forward with evidence that there is some other kind of substantial gainful employment which the plaintiff, given his age, education, work experience and medical condition, is capable of doing. *Taylor v. Weinberger,* 512 F.2d 664, 666 (4th Cir. 1975); *Hernandez v. Weinberger,* 493 F.2d 1120, 1122–23 (1st Cir. 1974); *Kenny v. Weinberger,* 417 F.Supp. 393, 398 (E.D.N.Y.1976).

In reviewing a denial of disability insurance benefits, a court must sustain the decision of the Secretary if it is supported by substantial evidence on the record as a whole. *Lewis v. Weinberger,* 515 F.2d 584, 586 (5th Cir. 1975); *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 41 (2d Cir. 1972); *Franklin v. Secretary of Health, Education and Welfare,* 393 F.2d 640, 642 (2d Cir. 1968). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) quoting from *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

In the present case, plaintiff argues that the Administrative Law Judge erred by holding that he was not under a disability for the requisite period of time. He claims that his employment from June to December of 1973 constituted a trial work period and, therefore, says that his disability cannot be regarded as having terminated during this time. Plaintiff bases his argument on the contention that a trial work period can begin after a five-month waiting period.

The Secretary, on the other hand, argues that the plaintiff's employment from June to December of 1973 did not constitute a trial work period. According to the Secretary, a trial work period can commence only after twelve months of disability. The Secretary contends that the plaintiff has not proven that he was unable to engage in substantial gainful employment for the requisite period of time.

Section 422(c) of title 42 U.S.C. provides in relevant part:

(2) For purposes of sections 416(i) and 423 of this title, any services rendered by an individual during a period of trial work shall be deemed not to have been rendered by such individual in determining whether his disability has ceased in a month during such period. . . .

(3) A period of trial work for any individual shall begin with the month in which he becomes entitled to disability insurance benefits . . .

(4) A period of trial work for any individual shall end with the close of whichever of the following months is the earlier:

(A) the ninth month, beginning on or after the first day of such period, in which the individual renders services (whether or not such nine months are consecutive); or

(B) the month in which his disability (as defined in section 423(d) of this title) ceases (as determined after application of paragraph (2) of this subsection).

Thus, a trial work period can begin with the month in which an individual becomes entitled to disability insurance benefits. Accordingly, the crucial question in this case is to determine when a person becomes "entitled" to disability insurance benefits.

Section 423(a)(1) of title 42 U.S.C. provides that every insured individual, who is under sixty-five, who is under a disability as defined in the Social Security Act, and who has filed an application for disability insurance benefits, is entitled to such benefits "for each month beginning with the first month after his waiting period (as defined in subsection(c)(2) of this section) in which he becomes so entitled" to these benefits. The term "waiting period" is defined as the earliest period of five consecutive calendar months "throughout which the individual with respect to whom such application is filed has been under a disability." 42 U.S.C. § 423(c)(2). *See also* 20 C.F.R. § 404.308.

■ The Court is of the opinion that a fair reading of the statutory provisions in question indicates that one is entitled to disability insurance benefits after the termination of the five-month waiting period provided that this individual has been under a disability as defined in the Social Security Act for the entire five-month period. As was previously indicated, an individual is under a disability as defined in this Act if his inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment can be expected to result in death or has lasted or *can be expected to last for a continuous period of at least twelve months*. Hence, an individual would be entitled to disability insurance benefits after a five-month waiting period if he was under a disability which could reasonably be expected to last for at least twelve months. This Court's interpretation as to when an individual becomes entitled to disability insurance benefits is confirmed by the legislative history. The House Committee Report, in recommending a reduction of the waiting period from six months to five months, said:

> Your committee's bill would reduce the waiting period for disability insurance benefits by one month. Under present law, entitlement to disability benefits cannot begin until after a worker has been disabled throughout a waiting period of 6 consecutive full months. For example, if a worker becomes disabled on January 10, the waiting period is the 6 full months February through July; his first month of entitlement to benefits is August, and the first benefit check is payable early in September. No benefit is payable, however, unless the disability is expected to last (or has lasted) at least 12 consecutive months or to result in death; this latter provision would not be changed by your committee's bill.

4. The waiting period was reduced from six months to five months in 1972.

5. However, it is noted that a claimant must have actually filed an application for disability insurance benefits before he can take advan-

House Report No. 92–231, 92d Cong., 2d Sess., U.S.Code Cong. & Admin.News, p. 5042 (1972).

■ Since an individual, who is under a disability as defined in the Social Security Act, is entitled to disability insurance benefits after a five-month waiting period, he can begin a trial work period at this time. This conclusion is supported by the Sixth Circuit's decision in *Otworth v. Finch*, 435 F.2d 542 (6th Cir. 1970). The court in *Otworth* said:

> The Act further provides that an individual may begin to receive the benefits after he has completed a "waiting period" of "six consecutive calendar months." After the waiting period is completed, the claimant may then attempt to return to work for a period of time up to nine months without the usual consequence of the work being considered as evidence of his ability to perform substantial gainful activity. 42 U.S.C. § 422(c)(2)–(3).[4]

435 F.2d at 542–43. The court in *Ozovek v. Mathews*, CCH Unemp.Ins.Rep. ¶ 14,957 (M.D.Pa.1976) appears to have reached a contrary conclusion, and its view is, therefore, rejected.

■ While an individual must be entitled to disability insurance benefits before a trial work period can begin, he does not have to be actually receiving such benefits at the time.[5] This can be seen from the case of *Lopez v. Cohen*, 295 F.Supp. 923 (S.D.Tex. 1969). In *Lopez* the plaintiff received on-the-job training under the Vocational Rehabilitation Act during the pendency of his application for disability insurance benefits (and, therefore, before his benefits started). In rejecting the plaintiff's claim, the hearing examiner took into consideration the fact that the plaintiff was at that time working a full work week. The court reversed the case and remanded it to the Secretary and in doing so, said that the hearing examiner, in making the disability

tage of the trial work period provisions. *Sanborn v. Weinberger*, 383 F.Supp. 859, 869–70 (D.Del.1974). It is clear that the plaintiff in the present case meets this requirement as he filed his application on March 2, 1973 and returned to work in June of 1973.

determination, "may not take into consideration, as evidence of the claimant's lack of disability, claimant's participation in the 'trial work program.' " 295 F.Supp. at 923. The case of *Stewart v. Cohen,* 309 F.Supp. 949 (E.D.N.Y.1970) does not support a conclusion that benefits must actually start before there can be a trial work period. In *Stewart,* the court indicated that the hearing examiner should have considered the applicability of the trial work provisions where the plaintiff had endeavored to work for forty-five days after his disability benefits had started. The court was not faced with a situation where payments had not yet begun and where the application for disability insurance benefits was still pending, and it did not suggest that the receipt of benefits was required before a trial work period could begin.

■ The Administrative Law Judge found that the plaintiff in the present case was not disabled within the meaning of the Social Security Act. It appears that the main reason for the judge's conclusion was that he felt there was no period of a year or more in which the plaintiff was unable to engage in substantial gainful activity. In rendering his decision, the judge failed to consider whether plaintiff's return to work from June to December of 1973 could be regarded as a trial work period. If this employment could properly be treated as a trial work period, then the fact that the plaintiff rendered these services could not be used to establish that his disability ceased in a month during this period. 42 U.S.C. § 422(c)(2); *Otworth v. Finch, supra; Lopez v. Cohen, supra.*

■ The case is remanded to the Secretary to determine whether plaintiff's employment from June to December of 1973 constituted a trial work period. In order to make this determination, the Secretary must decide whether the plaintiff was under a disability as defined in the Social Security Act in the period before he returned to work in June, 1973. It is clear that, as of June, 1973, plaintiff had not been unable to engage in substantial gainful employment by reason of a medically determinable physical or mental impairment for a continuous twelve-month period,

but he may have been suffering from a disability that could reasonably have been expected to last for such length of time. The statement in the hospital discharge report of April 5, 1973, that plaintiff "will be allowed to return to work" is relevant on this question, but is not conclusive. If this statement were regarded as conclusive, the purpose behind the trial work program would be defeated since most individuals will attempt to undertake a period of trial work only after a physician has given his approval. On remand, testimony of the vocational expert should be considered along with any additional evidence either party might want to submit.

If it is determined that the plaintiff is entitled to a period of disability and disability insurance benefits, he should be permitted to submit additional evidence to substantiate the proper termination date of his disability. While plaintiff stated that he was not able to return to work until December 17, 1974, there is no medical evidence in the record to substantiate plaintiff's disability after June 26, 1974. However, in a form requesting review of the hearing decision, plaintiff stated that there were additional medical records at the Syracuse Veterans Administration Hospital that were not in his original file.

Accordingly, defendant's motion for a judgment on the pleadings, or in the alternative, for summary judgment is denied. Plaintiff's motion for summary judgment is granted to the extent herein set forth. The case is remanded to the Secretary of Health, Education and Welfare for further proceedings consistent with this opinion.

It is so ordered.