Jose M. RIVERA, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE, Defendant.

No. 77 Civ. 1928 (VLB).

United States District Court,
S. D. New York.

April 11, 1981.

Jose M. Rivera, pro se.

R. Nicholas Gimbel, U. S. Atty., S. D. N. Y., New York City, for defendant.

VINCENT L. BRODERICK, District Judge.

## I.

The plaintiff, Jose M. Rivera, brought this action under the Social Security Act ("the Act")[1] to review a final decision of the Secretary of Health, Education and Welfare denying his application for social security disability benefits and for the establishment of a period of disability.[2] After a hearing the administrative law judge held that plaintiff had failed to prove that he was disabled within the meaning of the Act on or before March 31, 1974, the last date on which he met the special earnings requirements for disability insurance coverage. The administrative law judge's decision became that of the Secretary when it was affirmed by the Appeals Council on April 7, 1977. The case is before me on defendant's motion for judgment on the pleadings and plaintiff's cross-motion for judgment on the pleadings, or, in the alternative, for summary judgment.

## II.

In light of certain legal errors, discussed below, the Secretary's determination is reversed and the case is remanded for reconsideration and rehearing consistent with this memorandum order.

## III.

Plaintiff is a 41 year old married male Hispanic, with two children.[3] He has a first grade level of education and at the time of the hearing spoke no English. From 1956, when he came to the United States at the age of seventeen, until 1968 he was employed in various unskilled manual jobs that required him to work in a standing position.[4]

In 1968, while lifting a heavy object, plaintiff injured his lower back. He has not worked since, save for one month's employment at a facility for the handicapped in 1972. He did spend nine months, on an intermittent basis, attending a vocational rehabilitation program to qualify for his workmen's compensation payments, but was unable to continue because of dizziness and numbness in his hands.[5]

Plaintiff spends most of his time either lying down to relieve his back condition or sleeping as a result of the effects of medication.

The administrative law judge considered evidence of plaintiff's impairment relating to the period prior to March 31, 1974, when plaintiff last met the special earnings requirement, and the period after that date.

### 1. Period prior to March 31, 1974.

In 1968, after his injury, plaintiff was hospitalized for treatment with weights applied to his legs. He began treatment with Dr. David Graubard, a general surgeon, in 1969 and continued to see him until 1974.

---

1. The plaintiff is proceeding under Section 205(g) of the Act, 42 U.S.C. § 405(g).

2. The plaintiff applied for benefits under § 223 of the Act, 42 U.S.C. § 423, and sought the establishment of a period of disability under § 216(i) of the Act, 42 U.S.C. § 416(i).

3. At the time that the administrative law judge rendered her decision the claimant was 37 years old.

4. In his first employment in the United States, he put screws into beach chairs in a Brooklyn factory. He later took a job installing glass. His third job, at the factory where he suffered the injury resulting in his alleged impairment, appears to have been as a packer.

 In Puerto Rico, beginning at the age of 12, he "first worked with a gentleman helping him to prepare things for fumigating," then as a candy wrapper and "floor boy" in two candy factories, and later as a machine operator polishing aluminum windows in a factory.

5. The dates of plaintiff's attendance at this program cannot be conclusively ascertained from the record. See Part VI, infra.

As early as February 23, 1971, Dr. Graubard considered plaintiff to have a permanent partial disability. On July 13, 1971, at the recommendation of Dr. Graubard, plaintiff underwent a laminectomy for removal of a herniated disc. After surgery, plaintiff's pain abated. Dr. Irving Etkind examined petitioner on November 3, 1971 and found minimal partial disability. He considered plaintiff able to return to work if he avoided heavy lifting, bending and twisting. On December 1, 1971, Dr. Young of the Workmen's Compensation Board reported that claimant had a mild permanent partial disability.

In December 1973, and again on January 7, 1974, plaintiff was taken to the Metropolitan Hospital emergency room complaining of his back. On the latter occasion he was admitted for eleven days. Treatment consisted of pelvic traction, bed rest, and medication for pain. The plaintiff's discharge summary, prepared by Dr. Giovanelli, stated: "Range of motion limited in flexion and lateral bending. The patient has positive straight leg raising sign on the left with slight decrease of the tendon reflexes on the left. There was minimal motor weakness on the left lower extremity with deminished [sic] sensation along the entire left lower extremity." The summary also noted that "[t]he patient was placed in pelvic traction and bed rest and showed remarkable improvement." The diagnosis was low back derangement. Plaintiff's emergency room treatment was to be followed up in the orthopedic clinic, to which plaintiff made three visits.

On January 25, 1974, shortly after plaintiff's release from hospitalization at the Metropolitan Hospital, plaintiff's treating physician, Dr. Graubard, noted on a prescription pad headed by claimant's name that "the above named is still totally disabled." No reasons were given for this conclusion.

2. *Period from March 31, 1974 to date of hearing.*

The Workmen's Compensation Board classified plaintiff as permanently partially disabled on July 23, 1974. On September 9, 1974, after plaintiff visited Metropolitan Hospital's orthopedic clinic, one Dr. F. Baker, his attending physician, reported to the Workmen's Compensation Board that plaintiff was "still unemployable." In 1975, one Dr. Bernard informed the Workmen's Compensation Board that, among other things, plaintiff had restricted motion of the spine in all planes, limped to the left, and his toe and heel walking were unstable on the left. On March 9, 1976, an interviewer for the Department of Health, Education and Welfare observed that plaintiff was "slow in responding. It seems as if it is difficult for him to talk. He moves a lot in his chair. Opens & closes his hands a lot. Has difficulty in walking.... walks with a very marked limp."

Plaintiff continued to be followed up by the Metropolitan Hospital orthopedic clinic. On April 7, 1976 an orthopedist observed that plaintiff had chronic lower back pain with a "strong psychiatric overlay" and was unemployable. On June 10, 1976, plaintiff's motor and sensory responses were found to be intact and he was characterized as "employable."

Plaintiff was again hospitalized at the Metropolitan Hospital for treatment of lower back pain on August 2, 1976. He was treated with medication, placed in traction, and released after fifteen days. The discharge summary indicated his condition was improved,[6] but one week later at a follow-up orthopedic clinic appointment, plaintiff complained of pain.

Plaintiff was examined twice by Dr. Arturo Pena in connection with his complaints of back pain, once in May 1976, and again in October 1976. On the first visit, Dr. Pena found that the range of plaintiff's motion

---

**6.** The summary, prepared by Dr. Latteri, stated: "[p]ositive findings limited to extremities. Pulses full, no edema, sensation decreased ... in left calf.... straight leg raising pain on left and 30 degrees on right, muscle tone decreased left calf. Impression: SP lumbar laminectomy, possible herniated disc. L3–4, L4–5.... [A]ll motor and sensory deficits returned to normal. EMG findings were also normal.... [D]ischarged without pain..."

was flexion 40 degrees, hyperextension 35 degrees, lateral bending to right and left 30 degrees, and rotation to left and right 35 degrees. Straight leg raising was positive on the left at 35 degrees. Dr. Pena recommended an EMG study after his initial examination. When he examined plaintiff again in October, plaintiff had not had the EMG test, but his complaints of pain were unchanged. Dr. Pena found no evidence of pathology in X-rays of the lumbo-sacral spine.

Plaintiff complained of hematuria, for which he was treated by the G.U. Clinic at Metropolitan Hospital from May 1976 until September 1976. IVP and right retrograde pyelogram examinations did not indicate any abnormality.

Plaintiff began seeing Dr. Edgardo Glen for psychotherapy in April 1976. On November 16, 1976 Dr. Glen found "anxiety, depression, feelings of suspiciousness very close to paranoia. This condition was exacerbated by his physical complaints which came about as a result of an accident that he sustained at work. His condition is now chronic—".

### 3. Post-hearing period.

Plaintiff has submitted to this court the affidavit of Dr. Asa P. Ruskin in support of plaintiff's cross-motion for summary judgment. Dr. Ruskin, a neurological specialist, first saw plaintiff on January 11, 1971 in a neurological consultation at the request of Dr. Graubard. He saw plaintiff intermittently in follow-up consultations and after an interval of years resumed treatment of petitioner in 1977, and treated him twice in 1978, and twice in 1979.

Dr. Ruskin states that plaintiff was not under steady treatment by him because his office was moved. Plaintiff was treated at Dr. Ruskin's request, however, by other doctors, including Dr. Roy Brown. At no time did the Department of HEW or the Social Security Administration contact Dr. Ruskin in connection with plaintiff's disability action.

Dr. Ruskin's conclusion is that claimant has had chronic low back syndrome with severe muscle spasm and "has been totally and permanently disabled for industrial activity" since 1971. On September 30, 1977, four physical therapists independently examined plaintiff at Dr. Ruskin's request and concurred in his diagnosis. He emphasizes that his opinion is consistent with the records of the Workmen's Compensation Board that were available to the Social Security Administration at the time of the hearing.

Certain correspondence attached to Dr. Ruskin's affidavit indicates that he referred plaintiff to Dr. Roy Brown on October 12, 1977 for physical therapy. Six months later, Dr. Brown terminated the program because plaintiff had not responded to treatment.

This correspondence also reveals that plaintiff was hospitalized in February 1978 for nineteen days for exacerbation of lower back pain. Examination by Dr. Ruskin on May 18, 1978 revealed "marked low back spasm with loss of lumbar lordosis and marked limitation in range of motion, forward bending to 10 only." At the latest follow-up consultation referred to in Dr. Ruskin's affidavit, on July 18, 1979, plaintiff continued to have "severe chronic low back muscle spasm." The most recent letters from Dr. Ruskin to the Workmen's Compensation Board are requests for insurance to cover the costs of intensive hospital treatment, which Dr. Ruskin considers essential to plaintiff's recovery.

### IV.

On review under 42 U.S.C. § 405(g), this court is not to determine *de novo* whether claimant is disabled. The Secretary's factual findings are conclusive if supported by substantial evidence, *Miles v. Harris,* 645 F.2d 122 (2d Cir. 1981); *Rivera v. Harris,* 623 F.2d 212 (2d Cir. 1980), but "[w]here evidence has not been properly evaluated because of an erroneous view of the law, . . . the determination of the Secretary will not be upheld." *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir. 1979) (citing *Northcutt v. Califano,* 581 F.2d 164, 167 (8th Cir. 1978)).

In assessing disability, the elements of proof or factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on these facts; (3) subjective evidence of pain and disability testified to by the claimant or other; and (4) the claimant's educational background, age, and work experience. *Rivera v. Harris, supra*, 623 F.2d at 216 (2d Cir. April 14, 1980) (citing, *inter alia, Gold v. Secretary of HEW*, 463 F.2d 38, 41 n.2 (2d Cir. 1972)). Subjective evidence of disabling pain, factor number (3) above, may support a finding of disability even if it is unaccompanied by objective medical evidence.[7] *Marcus v. Califano, supra; Northcutt v. Califano, supra; Ber v. Celebrezze*, 332 F.2d 293 (2d Cir. 1964); *Stark v. Weinberger*, 497 F.2d 1092 (7th Cir. 1974); *Page v. Celebrezze*, 311 F.2d 757 (5th Cir. 1963). In considering subjective evidence of pain, "[t]he ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano, supra*, 615 F.2d at 573. To do so properly, however, the administrative law judge must first weigh "the objective medical evidence in the record, [the claimant's] demeanor, and other indicia of credibility." *Id.* Claims of disabling pain that are rejected—without consideration of their credibility—on the ground that objective, clinical findings do not establish a cause for such pain, are rejected under an erroneous legal standard, and such rejection is cause for reversal. *See id.* at 573–74.

The administrative law judge's decision indicates that she placed undue weight on the lack of objective findings to support plaintiff's claims of disabling pain and in so doing contravened the rule of *Marcus v. Califano, supra*. In her sixth finding the administrative law judge stated that "the record medical evidence does not support the claimant's long standing allegations of pain or limitations to the extent testified to by the claimant." On the way to this finding, the ALJ remarked that "[w]hile the claimant testified the pain has been continuous[,] the medical record would not support finding the extent and severity as he testified to," and, somewhat more obliquely, that "[t]he clinical and laboratory findings since the onset of the varied symptoms do not support the findings of dysfunction commensurate with the continuous symptomatology . . ." These statements strongly suggest that without considering plaintiff's credibility in respect of his claims of disabling pain, the administrative law judge rejected the claims because they were not supported by objective, clinical evidence. In light of *Marcus v. Califano, supra*, this was error. *See Rosario v. Harris*, No. 80–2016, 512 F.Supp. 874 (S.D.N.Y. April 10, 1981); *Boyle v. Harris*, 506 F.Supp. 294 (E.D.Pa.1980).

Only once in her decision did the administrative law judge expressly consider plaintiff's credibility. She noted that "the record does not support, neither is full credence given to the extent and severity of the pain as he testified to." Standing alone, this statement suggests, though not as strongly as might be desired, that subjective evidence of pain was properly rejected only after it was tested against objective clinical evidence and a consideration of the claimant's credibility. This statement, however, stands in marked contrast to the administrative law judge's other statements quoted above and to her sixth finding, which taken together do not entail any consideration of credibility and either expressly or impliedly relate the rejection of subjective evidence of pain to the lack of objective evidence to support it. The single reference to credibility cannot, in the context of the other statements regarding subjective evidence of pain, be considered as satisfying the teaching of *Marcus v. Califano* that a determination of disability may rest on

7. The Secretary has promulgated a new regulation that attempts to neutralize this long-established rule of law. *See* 45 Fed.Reg. 55567 (to be codified as 20 C.F.R. § 404.1529). As I have recently had occasion to observe, the attempt has not been successful. *Rosario v. Harris*, 512 F.Supp. 874, No. 80 Civ. 2016 (S.D.N.Y. April 10, 1981).

credible subjective evidence of disabling pain unsupported by clinical findings or other objective evidence. The administrative law judge is directed on remand to reconsider plaintiff's testimony with respect to disabling pain in light of the rule enunciated in *Marcus v. Califano,* and to make detailed findings with respect to plaintiff's credibility. *See Rosario v. Harris, supra,* at 876–877.[8]

## V.

Eligibility for disability payments requires a determination by the Secretary that claimant was disabled within the meaning of the Social Security Act prior to the termination of the special earnings period. A "disability," under 42 U.S.C. § 423(d)(1)(A), is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Furthermore, 42 U.S.C. § 423(d)(2)(A) provides that for purposes of section 423(d)(1)(A)

an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

■ 42 U.S.C. § 423(d)(5) places on claimant the burden of persuasion both as to his disability to engage in his previous work and as to his disability to engage in any other substantial gainful employment:

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

*See also Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980); *Gold v. Secretary of HEW,*

---

**8.** Upon remand, the Secretary shall take additional evidence from Dr. Asa Ruskin, one of the plaintiff's treating physicians, with respect to plaintiff's disability.

Dr. Ruskin has submitted to this court, on plaintiff's cross-motion, an affidavit that contains evidence relevant to and probative of plaintiff's claimed impairment. The affidavit indicates a consistency in plaintiff's allegations of pain over an 8-year period beginning before the expiration of plaintiff's insured status.

While the record does not unequivocally support his claim of disability, the Ruskin affidavit shows good cause why additional evidence should be taken from Dr. Ruskin in relation to plaintiff's alleged impairment, given the substantial weight that is attached to the opinion of a treating physician. *See, e. g., Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir. 1980); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir. 1978).

This evidence was not before the administrative law judge at the time of the hearing. Until June, 1980, when Congress amended § 205(g) of the Act, a court could "at any time, on good cause shown, order additional evidence to be taken before the Secretary ..." 42 U.S.C. § 405(g). The amended statute provides that the court may order additional evidence to be taken, "but only upon a showing that there is new evidence which is material *and that there*

is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g), as amended June 9, 1980 (emphasis added). Since the statute was amended after the instant action was brought and after the return date of the motions presently before the court, *cf. Saunders v. Schweiker,* 508 F.Supp. 305 (W.D.N.Y.1981), it would be "manifestly unjust" to apply the amendment retroactively, since the parties have not had an opportunity to be heard regarding the absence of Dr. Ruskin's statement from the record in prior proceedings. *See Bradley v. Richmond School Board,* 416 U.S. 696, 720, 94 S.Ct. 2006, 2020, 40 L.Ed.2d 476 (1973). Even if the new amendment did apply, good cause has been shown for the failure to incorporate Dr. Ruskin's opinion in prior proceedings. The plaintiff, a Spanish-speaking person unrepresented by counsel, might not have realized the importance attached to the treatment of treating physicians. *See, e. g. Bastien v. Califano, supra.* And, in any case, it was the obligation of the ALJ to insure that the record was properly developed for the benefit of the pro se plaintiff. *See, e. g., Hankerson v. Harris,* 636 F.2d 893 (2d Cir. 1980). Yet, according to Dr. Ruskin's affidavit, the Secretary made no effort to contact him in connection with plaintiff's claim.

463 F.2d 38, 41 (2d Cir. 1972). The Secretary, however, bears an intermediate burden—a burden to come forward with evidence of claimant's ability to engage in other substantial gainful employment— once claimant has established a *prima facie* case of disability:

> Once the claimant has established a prima facie case, by showing that his impairment prevents his return to his prior employment, the burden shifts to the Secretary, who must produce evidence to show the existence of alternative substantial gainful employment which the claimant could perform, considering not only his physical capability but as well his age, his education, his experience, and his training.

*Dousewicz v. Harris*, 646 F.2d 771 at 772 (2d Cir. 1981) (quoting *Parker v. Harris, supra*, 626 F.2d at 231). *See Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978); *Bastien v. Califano*, 572 F.2d 908, 912–13 (2d Cir. 1978); *Phillips v. Department of HEW*, 453 F.Supp. 1047, 1051 (S.D.N.Y.1978). This burden cannot be satisfied by the conclusory assertion that claimant is capable of doing less demanding work than that required by his previous employment:

> [I]t is insufficient for the Secretary to assert that [claimant] might do jobs of a light and sedentary nature . . . without providing a job description clarifying the nature of the job. . . .

*Bastien v. Califano, supra*, at 912–13.

The administrative law judge did not adduce evidence of specific jobs that claimant might be able to hold despite his inability to engage in his previous work. Nevertheless, after the administrative law judge reviewed the evidence she concluded that claimant had failed to meet his burden of proving a disability as of March 31, 1974 within the meaning of the Social Security Act and made, among others, the following findings:

7. Within the impairment[,] the claimant continued to possess on March 31, 1974 the residual capacity to engage in light and sedentary physical activity on a sustained basis.

8. The claimant in 1968 and continuing until March 1974 possessed the residual functional capacity to engage in a variety of light and sedentary work activity commensurate with his age[,] education[,] and work history.

9. The claimant's impairments did not prevent him from engaging in substantial gainful activity for any continuous period of at least 12 months which began on or before March 31, 1974.

These findings, together with the administrative law judge's ultimate determination that plaintiff was not disabled within the meaning of the Act, incorrectly imply that plaintiff established a *prima facie* case of disability, but that the Secretary produced the requisite evidence of plaintiff's ability to do other substantial gainful work. The Secretary did not, however, come forward with evidence of other work available to the plaintiff, and thus failed to meet his burden on the issue. *Cf. Dousewicz v. Harris, supra*, at 774.

■ If plaintiff's evidence did not establish a *prima facie* case of disability, then there was no necessity for findings regarding plaintiff's ability to engage in light and sedentary work. If, on the other hand, plaintiff's evidence did establish a *prima facie* case, then the Secretary was obliged to produce evidence of specific jobs plaintiff could do. On remand the administrative law judge will reconsider whether claimant has established a *prima facie* case of disability. If he has, then the Secretary must come forward with evidence of specific jobs in the economy that, as of March 31, 1974, plaintiff was capable of performing and that would have provided him with substantial gainful employment.[9]

**9.** I do not ignore the statement in *Parker v. Harris, supra*, at 235, that "no useful purpose would be served here by a remand for the development of further vocational evidence." That statement, however, was at least in part the result of the Appeals Council's representation that it would be "inappropriate" for the administrative law judge in that case to obtain current vocational testimony on jobs appellant could have performed on the relevant date of

## VI.

Plaintiff argues that the administrative law judge erred by considering evidence of plaintiff's attendance at an Office of Vocational Rehabilitation program in determining that plaintiff was not disabled. The record indicates that plaintiff attended the program "for about 9 months, on and off, not every week, not all the time," and did so to preserve his qualification to receive worker's compensation payments. The inclusive dates of plaintiff's attendance at the program are not specified in the record.

The statement in the administrative law judge's decision that "[b]y the claimant's own testimony he did attend [Office of Vocational Rehabilitation] training for nine months in 1974 so that he was not extensively physically or emotionally incapacitated at that time" demonstrates that she did, indeed, consider plaintiff's attendance in making her disability determination. Her reference to a 9-month period in 1974, however, conflicts with plaintiff's testimony at the hearing, which suggests that at least part of plaintiff's attendance at the program was in 1973. The latter date can be reconstructed from plaintiff's testimony that a certain hospitalization in January 1974 occurred while he was attending the program. From this inconsistency in the record, I do not consider the inclusive dates of plaintiff's attendance to have been established with certainty.

Under 42 U.S.C. § 422(c)(2), whether the administrative law judge properly considered evidence of plaintiff's attendance at the program depends on whether plaintiff attended and rendered services during a "period of trial work":

> (2) For purposes of sections 416(i) and 423 of this title, any services rendered by an individual during a period of trial work shall be deemed not to have been rendered by such individual in determining whether his disability has ceased in a month during such period. For purposes

of this subsection the term "services" means activity which is performed for remuneration or gain or is determined by the Secretary to be of a type normally performed for remuneration or gain.

42 U.S.C. § 422(c)(2). *See* 45 Fed.Reg. 55597 (to be codified in 20 C.F.R. § 404.1592 (1980)). *See also Sigmon v. Califano*, 617 F.2d 41, 43 (4th Cir. 1980); *Campbell v. Califano*, 483 F.Supp. 1306 (E.D.Pa.1980); *McMillen v. Califano*, 443 F.Supp. 1362 (N.D.N.Y.1978); *Lopez v. Cohen*, 295 F.Supp. 923 (S.D.Tex.1969). The commencement, duration, and termination of the "period of trial work" are determined in accordance with section 422(c)(3) & (4).

The work performed by plaintiff in the program was performed to qualify him for worker's compensation payments, and thus was performed for "gain" within the meaning of section 422(c)(2). *Cf.* 45 Fed. Reg. 55597 (to be codified in 20 C.F.R. § 404.1592 (1980)). Nevertheless, the record does not conclusively establish the period of plaintiff's attendance at the program. Nor does the record indicate that the administrative law judge determined the "period of trial work." In the absence of these two pieces of information, it is not possible to ascertain whether or not the administrative law judge improperly considered evidence of plaintiff's attendance at the occupational rehabilitation program. On reconsideration, therefore, the Secretary is to determine the commencement and termination of the trial work period and ascertain with certainty the inclusive period of plaintiff's attendance at the program. In accordance with 42 U.S.C. § 422(c)(2), evidence of plaintiff's attendance at the program during dates within the trial work period shall not be considered in determining whether plaintiff's disability had ceased or failed to exist in a month during that period.

## VII.

This discussion does require some focus upon the very difficult and demanding task

termination of the special earnings requirement, which was June 30, 1976. A similar representation has not been made by the Appeals Council in this case. Furthermore, it may be that the administrative law judge will not

require the Secretary to develop further vocational evidence if, upon reconsideration, she determines that plaintiff has not established a *prima facie* case.

which is thrust upon the administrative law judge in disability cases. It has been said that "[i]n the administrative hearing, as distinguished from the cause in this court, there are no formal adversaries," *Wray v. Folsom,* 166 F.Supp. 390, 395 (W.D.Ark. 1958), and the non-adversarial nature of the hearing has been cited as a basis for the obligation imposed on the administrative law judge "scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts surrounding the alleged right or privilege" in cases where the claimant is unassisted by counsel. *Gold v. Secretary of HEW, supra,* at 43 (quoting *Hennig v. Gardner,* 276 F.Supp. 622, 624–25 (N.D.Tex.1967)). *See Miracle v. Celebrezze,* 351 F.2d 361, 382–83 (6th Cir. 1965); *Rascoe v. Califano,* 483 F.Supp. 873, 877 (S.D.N.Y. 1978). *See also Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir. 1979); *Scott v. Celebrezze,* 241 F.Supp. 733, 736 n.21 (S.D. N.Y.1965).

█ In this "non-adversarial" setting, however, reviewing courts have imposed adversarial burdens upon the parties, such as the evidentiary burdens here discussed. In the many cases like this one where neither the claimant nor the Secretary is represented by counsel, the administrative law judge has the duty "to protect the rights of both the claimant and the Secretary." J. Smith, *Social Security Appeals in Disability Cases,* 28 Ad.L.Rev. 13, 14 (1976). Thus at the very time she is "scrupulously" inquiring into the facts surrounding claimant's claim, and prior to rendering a final disability determination which will require her to weigh the evidence and make findings of fact, she must also see to it that the Secretary meets his burden of coming forward with adequate evidence. It is no wonder that from this confusion of roles error results.

The protean nature of the ALJ's role is illustrated by the path the instant case may take on remand. If plaintiff establishes a *prima facie* case of disability—a determination to be made by the administrative law judge in her judicial capacity—it thereupon will become the administrative law judge's duty, in seeing to it that the Secretary's evidentiary burdens are met, to adduce evidence of specific work in the economy that, given his limitations, plaintiff could have performed in the relevant period. Such evidence is normally presented through the testimony of a vocational expert, who will be called and questioned by the administrative law judge in discharge of her duty to protect the rights of the Secretary. Where, as here, the claimant was not represented by counsel, the administrative law judge must also protect the rights of the plaintiff by carefully probing for weaknesses in the vocational expert's testimony, as applied to the claimant's situation. The inadequacy of this procedure, as measured by its likelihood to yield an accurate evaluation of a claimant's abilities in light of available work, has been elsewhere noted, *Dobrowolsky v. Califano, supra,* at 408 & n.14 (citing and quoting J. Mashaw, *et al., Social Security Hearings and Appeals* 77–78, 86 (1978)).

Thus roles that in courts are kept distinct—those of advocates for either side, and that of judge—in disability administrative hearings become fused and are collectively performed by the administrative law judge, who routinely serves as advocate for both sides and as judge. This requirement that the administrative law judge remain impartial while performing advocacy functions in essentially non-adversarial proceedings creates a tension between the intended and actual natures of the disability hearing which leads to error with alarming frequency. The incidence of error in disability hearings suggests that the present regime simply is not working. The time has come to reexamine the procedures to be followed in such hearings.

This case is placed on the suspense docket of this court pending further proceedings of the Secretary.

SO ORDERED.