Genevieve ROSARIO, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

No. 92–CV–1843 (DGT).

United States District Court, E.D. New York.

Jan. 30, 1995.

**144**

Robert E. Grey, Grey & Grey, Farmingdale, NY, for plaintiff.

Nancy A. Miller, Asst. U.S. Atty., Brooklyn, NY, for defendant.

## MEMORANDUM AND ORDER

TRAGER, District Judge:

In this social security disability benefits case, before the Court are plaintiff's and defendant's cross-motions for judgment on the pleadings. For the reasons which follow, the cross-motions for judgment on the pleadings are denied, and the case is remanded to the Administrative Law Judge (ALJ) for a determination consistent with this decision.

### Background

Plaintiff, Genevieve Rosario, is a 42-year-old woman with a high school equivalency diploma and 12 college credits. On June 9, 1989, plaintiff was injured in an automobile accident during the course of her employment as a nurse's aide. As a result of the accident, plaintiff sustained injuries to her neck, back, shoulders and legs.

On June 13, 1989, plaintiff was examined by her physician, Dr. Piontkowski, who found the following: 1) "paracervical spasm, moderate with limitation secondary to pain"; 2) "marked spasms" of the lower back; 3) mild to moderate degenerative changes over the superior aspect of the lumbosacral spine; 4) ecchymosis over the tibia and fibula of the left and right legs; 5) normal neurological examination of the upper extremities; and 6) positive straight leg raising to 50 degrees with normal neurological functioning of the legs. Dr. Piontkowski diagnosed plaintiff as having lower back derangement, sciatica and cervical sprain. In addition, he concluded that a herniated disc could not be ruled out. Plaintiff was advised to rest, take anti-inflammatory and muscle relaxant medication and to seek therapy with ultrasound, electrical stimulation and eventually exercise.

Plaintiff was examined by Dr. Donald Holzer, a neurologist, on July 19, 1989. Dr. Holzer found, among other things, a "moderate degree of paracervical muscle spasm with punch tenderness over the cervical spine and limitation of range of motion of the cervical spine ... in all directions." (Tr. at 94). Dr. Holzer's diagnosis was "cervical sprain, rule-out radiculopathy" and "lumbar sprain, rule-out radiculopathy." (Tr. at 95).

A CAT scan, MRI and EMG were performed at Dr. Holzer's recommendation. The MRI of plaintiff's spine, which was performed on October 10, 1989, was unremarkable. The CAT scan, performed on November 3, 1989, revealed a diffuse annular bulge at L4–L5 with mild compression on the anterior thecal sac. The EMGs and nerve conduction studies of plaintiff's lumbar and cervical spine were conducted on November 29, 1989 and December 11, 1989, respectively. Both were within normal ranges and showed no evidence of entrapment neuropathy or radiculopathy.

Plaintiff continued to see Dr. Holzer through August of 1990. Throughout that time, plaintiff's condition improved somewhat, but she continued to have neck, back, and leg pain. Dr. Holzer prescribed Amitriptyline, Midrin, and transcutaneous electrical nerve stimulation (TENS) (Tr. at 105).

On June 4, 1990, plaintiff returned to work as a nurse's aide for a period of three days. Plaintiff could not continue in this capacity as she experienced "recurrent pain in the neck and low back" when lifting a patient (Tr. at 108). Dr. Holzer examined plaintiff again on June 12, 1990, and reported that the examination revealed severe paracervical and paralumbar muscle spasm and tenderness. Plaintiff was to continue biofeedback and physical therapy in addition to using her TENS unit and was prescribed Soma compound (Tr. at 108).

At Dr. Holzer's request, plaintiff was examined by Dr. James Dana on August 21, 1990. Plaintiff complained of headaches, neck pain, low back pain, numbness and tingling in both legs and that her right leg "[gave] out" at times. Based upon his examination and the results of the MRI, CAT scan and EMGs, Dr. Dana diagnosed plaintiff as having cervical sprain, bilateral sacroiliac joint and ilio-lumbar ligament sprain, myofascial pain syndrome and bulging annulus at L4–L5. Dr. Dana recommended physical therapy, electrostim, trigger point therapy, a

variety of massage therapies, hydrocortisone injections and a sacroiliac joint belt (Tr. at 121).

Dr. K. Seo, an orthopedic surgeon, conducted a consultative examination on behalf of the Social Security Administration (SSA) on September 10, 1990 (Tr. at 113–15). Based on his examination and plaintiff's medical records, Dr. Seo's impression was "status post [motor vehicle accident], cervical derangement with low back derangement" (Tr. at 115).

Plaintiff continued to see Dr. Dana through April 1991. During this period, Dr. Dana's diagnosis of August 21, 1990, remained unchanged except for an additional diagnosis of nerve root irritation at C8 (Tr. at 117–130). On April 16, 1991, Dr. Dana completed a disability certificate, presumably for plaintiff's workers' compensation benefits, which indicated that plaintiff was "totally incapacitated" from June 9, 1989, to that date. (Tr. at 122). On April 25, 1991, Dr. Dana completed a medical assessment of plaintiff's ability to perform work-related activities, at SSA's request, which stated that plaintiff had the capacity to lift up to 10 pounds, stand/walk for a total of 2–3 hours per day, ½ hour without interruption, and sit a total of 8 hours per day, 1 hour without interruption. (Tr. at 123–25).

Plaintiff applied for disability benefits on April 7, 1990. Her initial application was denied on September, 28, 1990. Reconsideration of the application was denied on December 10, 1990.

In February 1991, plaintiff requested a hearing in front of an ALJ to review the denial of her application for benefits. The hearing was held on May 1, 1991. At the hearing, plaintiff testified that she had worked steadily since March 25, 1991, as a public safety dispatcher for the Suffolk County Police Department (Tr. at 38). Plaintiff stated that although she still experienced pain in her back, legs and head, her employer permitted her to alternate between sitting and standing in an effort to alleviate the pain (Tr. at 40–43). In addition, plaintiff testified that the use of the TENS unit, and various medications helped to alleviate the pain.

In a written decision dated May 29, 1991, the ALJ determined that plaintiff was "not under a 'disability,' . . . at any time through the date of" the decision (Tr. at 18). Specifically, the ALJ found that although the plaintiff's impairments preclude the performance of her past relevant work, they do not, given her age and education, preclude her from performing any substantial gainful activity which exists in the national economy (Tr. at 20–22). Noting Dr. Dana's medical assessment of plaintiff's ability to do work related activities, prepared on April 25, 1991, the ALJ concluded that plaintiff retained the residual functional capacity to perform sedentary work—work that entails approximately six hours of sitting and two hours of standing/walking during an eight hour workday, and lifting no more than 10 pounds (Tr. at 20, exhibit 14). Finally, the ALJ noted that although the plaintiff had established her inability to perform past relevant work as a nurse's aide, the Secretary had met her burden of proving the existence of other jobs in significant numbers in the national economy which plaintiff could perform. Accordingly, the ALJ determined that plaintiff was not disabled within the meaning of Title II of the Social Security Act.

Plaintiff appealed the decision of the ALJ on July 29, 1991. The ALJ's decision was upheld by the Appeals Council on March 20, 1992. The Appeals Council concluded that there was no basis under the regulations for granting the requested review as the ALJ's determination was consistent with the treating physician's assessment of plaintiff's ability to perform work-related activities, dated April 25, 1991.

### Discussion

■ Title 42 U.S.C. § 405(g) provides the Court's jurisdictional basis and scope of review. According to the statute, the Court may review the factual findings of the Secretary only to determine whether those findings are supported by substantial evidence in the administrative record.

■ The Supreme Court has defined "substantial evidence" in the context of Social Security cases to be evidence which "a reasonable mind might accept as adequate to support a [particular] conclusion." *Richard-*

*son v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991). The Secretary's decision is not undermined where there is evidence which would support a different conclusion so long as there is substantial evidence for the Secretary's decision in the record. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972). Accordingly, the Court's inquiry is whether the record, when read as a whole, contains evidence which would allow a reasonable mind to accept the Secretary's conclusions, and where there is evidence susceptible of more than one rational interpretation, the Secretary's conclusion should be upheld. *See Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982).

The main issue in this case is whether the Secretary's determination that plaintiff was "not under a 'disability,' ... *at any time* " is supported by substantial evidence. (Tr. at 18) (emphasis added). The Secretary noted that although plaintiff had sustained her burden of proving that she could no longer perform her prior work, given plaintiff's age, education, the medical evidence, and the fact that she had started a new job, plaintiff at all times retained the residual functional capacity to perform a full range of sedentary work. This determination, which was the underlying premise of the ALJ's conclusion that plaintiff was *never* disabled, is not supported by substantial evidence.

Plaintiff was injured on June 9, 1989. She became eligible to receive disability benefits on December 1, 1989—five months after the onset of a disability which was expected to last twelve months, and which may have lasted for one year and eight months. Plaintiff filed her claim for benefits on April 7, 1990. Plaintiff's testimony indicates that all during this period, her medical condition caused her a great deal of pain in her back, neck, and legs. Plaintiff experienced persistent headaches which, in addition to her other pain, prohibited her from performing her prior work. Plaintiff's condition also limited her ability to perform her normal daily activities of driving, walking, cooking, shopping for groceries, washing laundry, and cleaning. Besides plaintiff's testimony, the uncontroverted medical evidence prior to March 25,

1991—the date plaintiff returned to work— indicates plaintiff had limited mobility, limited ability to perform her normal daily activities, and could not perform her prior work. In addition, there is evidence that in June of 1990, plaintiff attempted to return to her prior work, but only was able to do so for three days. This evidence indicates that plaintiff was disabled at least for some period of time prior to her returning to work as a public safety dispatcher.

■ While there is also evidence that over time plaintiff's condition improved, the record is unclear as to when her condition was such that she was capable of returning to work. In addition to the medical evidence from plaintiff's various treating physicians, SSA's own consultative physician indicated that plaintiff experienced a great deal of pain in her neck and legs, and had limited mobility as late as September of 1990, more than one year after the accident. Although the ALJ noted that plaintiff had returned to work in March of 1991—almost two years after the accident—and thus appeared able to perform a sedentary work at that time, the record is lacking in evidence supporting the ALJ's conclusion that plaintiff was able to do so throughout the entire period of her claimed disability. Despite this uncertainty, the ALJ held that plaintiff always retained the ability to perform sedentary work, and, therefore, was *never* under a disability. In light of the uncontroverted medical evidence, this determination is not supported by substantial evidence.

The ALJ also relied on Dr. Dana's April 25, 1991, report in determining that, during the entire period she claimed to be disabled, plaintiff retained the residual functional capacity to do sedentary work, and, therefore, was never disabled. According to the ALJ, Dr. Dana's April 25 report, which stated that plaintiff had the capacity to lift up to 10 pounds, stand/walk for a total of 2–3 hours per day, and sit a total of 8 hours per day, indicated that at all times prior thereto, plaintiff could perform a full range of sedentary work. Reliance on this report was neither fair nor rational.

It is more than a stretch to rely on the April 25, 1991, report to find that, in Decem-

ber 1989, more than fifteen months before, when plaintiff first became eligible for benefits, she could lift, stand and sit as indicated, and was, therefore, never disabled. The report, by its own terms, contains a medical assessment as of April 25, 1991. Indeed, Dr. Dana's April 16 disability certificate, completed just nine days prior to the April 25 report, indicated that plaintiff was "totally incapacitated" from June 9, 1989, to April 16, 1991. The ALJ found the April 16 disability certificate to be in contrast to the April 25 report (Tr. at 20), and attempted to reconcile the two reports by saying that the April 25 medical assessment was a clarification of the April 16 disability certificate.

There is nothing in the record, however, which indicates that the reports were in contrast to one another, or that the April 25 report was a clarification of the April 16 disability certificate. The disability certificate is a one-page form which contains the length of plaintiff's treatment, Dr. Dana's diagnosis, and an indication that she was "totally incapacitated." (Tr. at 122). This form is typically used for proof of a disability in workers' compensation cases. The April 25 report, a three-page form entitled "Medical Assessment of Ability to do Work–Related Activities", contains Dr. Dana's opinion on plaintiff's ability to sit, stand, walk, lift objects, and perform other work-related activities. This form is typically used by SSA to determine a claimant's physical capabilities as of the date the form is completed. Nowhere on the April 25 report was Dr. Dana asked for an opinion on plaintiff's disability status; nor does the form indicate that the medical assessment relates to a prior point in time, as does the disability certificate. As these forms were used for different purposes, and contained different information, both medically and chronologically, they were not in contrast and need not have been reconciled. More significantly, both reports were consistent with the medical diagnoses by plaintiff's other treating physicians and SSA's consultative physician. (R. at 96–121). Accordingly, the record is without substantial evidence to support the finding that plaintiff retained residual functional capacity to perform sedentary work at all times prior to her return to work.

Moreover, in reaching the decision that plaintiff was never under a disability, it was improper legally for the ALJ to rely on plaintiff's return to work by the time of the hearing, and Dr. Dana's report of April 25, 1991. Besides lacking a reasonable factual basis, reliance on both of these factors was inappropriate given the SSA's own regulations, and case law. *See* 42 U.S.C. § 422(c)(2); *Carroll v. Secretary of HHS,* 705 F.2d 638, 643 (2d Cir.1983). Removing these factors from the record removes any question that the Secretary's determination is not supported by substantial evidence.

■ Given the nature of Ms. Rosario's injuries, the fact that she was working full time beginning on March 25, 1991, should not have been considered by the ALJ in determining whether she was disabled, or retained the residual functional capacity to do sedentary work, for the twenty-one month prior to that date. *See* 42 U.S.C. § 422(c)(2); *Goldstein v. Harris,* 517 F.Supp. 1314, 1316 (S.D.N.Y.1981); *Rivera v. Secretary of Health, Educ. and Welfare,* 513 F.Supp. 194, 202 (S.D.N.Y.1981). Under the SSA statute, an individual becomes eligible to receive benefits five months after the onset of a disability which is expected to last at least 12 months. *See* 42 U.S.C. § 423(a). A claimant is also entitled to a nine month trial work period following the month in which he or she becomes eligible to receive benefits. *See* 42 U.S.C. § 422(c)(3). In addition, a claimant need not be receiving disability benefits to be entitled to a trial work period, but need merely have filed an application to receive benefits. *See McMillen v. Califano,* 443 F.Supp. 1362, 1368 (N.D.N.Y.1978). Moreover, according to the SSA statute, regulations and case law, evidence of trial work cannot be used at all in determining whether a claimant is entitled to disability benefits. *See* 42 U.S.C. §§ 422(c)(2); *Goldstein, supra,* 517 F.Supp. at 1316–17; *Rivera, supra,* 513 F.Supp. at 202; *McMillen, supra,* 443 F.Supp. at 1368.

■ Although plaintiff returned to work prior to receiving any disability benefits, this should have been deemed part of the trial work period to which she was entitled, *see*

*McMillen, supra,* 443 F.Supp. at 1367, and, therefore, should not have been considered by the ALJ in determining whether she retained the residual functional capacity to do sedentary work. *See* 42 U.S.C. § 423(c)(2); *Goldstein, supra,* 517 F.Supp. at 1316–17; *Rivera, supra,* 513 F.Supp. at 202. Accordingly, the ALJ also erred in considering plaintiff's return to work as evidence that she retained the residual functional capacity to do sedentary work, and, therefore, was not disabled within the meaning of the Social Security Act.

■ It was also improper legally for the ALJ to rely on Dr. Dana's April 25 report. While the report indicated that plaintiff could stand for 2–3 hours per day, and sit for 8 hours, it also indicated that she could only stand for ½ hour without interruption, and could only sit for 1 hour without interruption. Further, plaintiff testified that in order for her to perform the job of a public safety dispatcher, plaintiff must alternate between sitting for a period of one hour, and standing for a period of ½ hour. The ALJ's determination that plaintiff retained sufficient residual functional capacity to perform a full range of sedentary work despite the fact that she had to alternate between sitting and standing to do so is in stark contrast with the SSA regulations and case law. 20 C.F.R. § 404.1567(a) defines sedentary work as "work [which] involves lifting no more than 10 pounds at a time and . . . a certain amount of walking and standing . . ." The case law interpreting the regulation specifically holds that the concept of sedentary work normally does not contemplate situations where a claimant must alternate between sitting and standing. *See Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984); *Carroll, supra,* 705 F.2d at 643; *Deutsch v. Harris,* 511 F.Supp. 244, 248 (S.D.N.Y.1981). If the ALJ had considered the evidence that plaintiff must alternate between sitting and standing to perform her job, and the applicable regulations and case law, a determination that plaintiff was not capable of performing sedentary work prior to her return to work may have followed.

In any case, given the evidence in this record, a "reasonable mind" cannot accept the Secretary's determination that at all times prior to returning to work plaintiff retained the residual functional capacity to do sedentary work within the meaning of Title II of the Social Security Act. Accordingly, the Secretary's determination was not supported by substantial evidence.

From the record, it is probable that plaintiff was disabled at least for some period of time prior to returning to work. It is also clear that at some point in time plaintiff's condition improved so that she could perform the work she started on March 25, 1991. However, the date at which plaintiff became able to perform a full range of sedentary work, and whether she can do so even now, cannot be determined from this record.

### Conclusion

The cross-motions for judgment on the pleadings are denied. Further, given the lack of clarity in the record, the case is remanded to the ALJ for a clarification thereof. The ALJ is directed to make a determination of the precise period of plaintiff's disability if it did terminate prior to the date she returned to work on March 25, 1991, as a public safety dispatcher, as well as the subsequent trial work period to which she is entitled.