**Joseph GARRETT, Plaintiff,**

v.

**Elliot L. RICHARDSON, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 71–1071.**

United States District Court,
D. South Carolina,
Greenville Division.
Aug. 15, 1973.

Willie T. Smith, Jr., Legal Services Agency, Greenville County, Inc., Greenville, S. C., for plaintiff.

John K. Grisso, U. S. Atty., D. of S. C., Columbia, S. C., and Henry Herlong, Asst. U. S. Atty., for the D. of S. C., Greenville, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

This is a suit by the plaintiff against the Secretary of Health, Education, and Welfare under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary denying the plaintiff's application for the establishment of a period of disability under § 216(i) of the Act, 42 U.S.C. §

416(i), and for disability insurance benefits, as provided by § 223 of the Act, 42 U.S.C. § 423.

The plaintiff filed applications to establish a period of disability and for disability insurance benefits on October 13, 1969 and November 14, 1970, the latter being considered by the Secretary as a request for reconsideration. These applications were denied initially and upon reconsideration, and pursuant to the plaintiff's timely request a hearing was held *de novo* before a hearing examiner in Greenville, S. C., on May 19, 1971, at which time plaintiff was represented by counsel. The hearing examiner rendered his decision adverse to the plaintiff on July 9, 1971, which decision became the final decision of the Secretary when it was affirmed by the Appeals Council on September 1, 1971.

The only issue before this court is whether or not the findings of the Secretary are supported by substantial evidence, and if they are the findings of the Secretary must be accepted. This court may not try the case *de novo* and substitute its findings for those of the Secretary. Flack v. Cohen, 413 F.2d 278 (4th Cir. 1969). This does not mean however that the findings of the administrative agency must be blindly accepted. On the contrary, the statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action. *Flack* mandates a critical and searching examination of the record, and the setting aside of the Secretary's decision when necessary to insure a result consistent with congressional intent and elemental fairness. *Flack*, supra, at 279–280. See also Thomas v. Celebrezze, 331 F.2d 541 at 543 (4th Cir. 1964). As was stated by Judge McAllister in a recent Sixth Circuit opinion, and quoted with approval in Garrett v. Richardson, 471 F.2d 598, 604 (8th Cir. 1972):

"It used to be easy enough for an appellate court to affirm an administrative agency on the ground that the findings were supported 'by substan-

tial evidence,' if it could find just a trace of evidence to support them. But that is not the case anymore. Congress grew critical of such affirmances which ignored conflicting evidence and, in turn, brought about harsh criticism of the courts for such decisions on the ground that cases were affirmed merely because the appellate court could find evidence in the record which, viewed in isolation, substantiated a Board's findings." Floyd v. Finch, 441 F.2d 73, 76 (6th Cir. 1971).

▮▮ Substantial evidence has been defined by the Supreme Court as "more than a mere scintilla". It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842, 852 (1971). See also Kyle v. Cohen, 449 F.2d 489, 492 (4th Cir. 1971). As was stated in Dyer v. Richardson, 347 F. Supp. 478 (E.D.Tenn.1972), quoting Consolo v. Federal Maritime Com., 383 U.S. 607, 619–620, 86 S.Ct. 1018, 1026, 16 L. Ed.2d 131 (1966), "It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." Id. at 481. It is now clearly settled that written medical reports by a licensed physician who has examined the claimant may constitute "substantial evidence" in social security cases, despite their hearsay character, Perales, supra, 402 U.S. at 402, 91 S.Ct. at 1428, 28 L.Ed.2d at 853.

▮▮ In order to establish a claimant's entitlement to social security disability benefits, there must be a showing that (1) there is a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve (12) months, and (2) that the impairment in fact caused an inability to engage in any substantial gainful activity. Harris v. Richardson, 450 F.2d 1099 (4th Cir. 1971); Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968) makes it

clear that more than the objective medical facts are to be considered in this regard. As stated in *Hicks*:

Before making a finding of a claimant's ability or inability to engage in any substantial gainful activity as contemplated by the law, there is a duty to consider the objective medical facts, which are the clinical findings of examining or treating physicians divorced from their expert judgment or opinions as to the significance of the clinical findings; (2) the medical opinions of these physicians; (3) the subjective evidence of pain and disability testified to by the claimant and corroborated by other evidence; and (4) the claimant's background, work history and present age. *Id.* at 302 (citations omitted).

▮ It was also made clear in *Hicks* that a claimant's maladies must be considered in combination and not fragmentized in evaluating their effects on the claimant. *Id.* See also Branham v. Gardner, 383 F.2d 614 (6th Cir. 1967).

▮ The general rule is that in order to authorize denial of social security benefits on the ground that the impairment does not render the claimant unable to engage in any gainful employment, "there must be evidence to show the reasonable availability of jobs which the claimant can perform." Hayes v. Gardner, 376 F.2d 517 (4th Cir. 1967). The burden of proving disability under the Act rests on the plaintiff. Sliger v. Richardson, 315 F.Supp. 1093 (W.D.Va. 1970), aff'd, 436 F.2d 1385 (4th Cir. 1971); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). This burden need not, however, be carried to a point beyond a reasonable doubt, Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1964); Ketron v. Finch, 340 F.Supp. 845, 849 (D. C.Va.1972). When a plaintiff shows that he is disabled from engaging in his former occupation, the burden shifts to the Secretary to come forward with a showing of other employment available to a person of plaintiff's age, education, work experience, skills, and physical lim-

itations. Meneses v. Secretary of Health, Education, and Welfare, 143 U.S.App.D.C. 81, 442 F.2d 803 (1971); Hicks v. Gardner, supra, 393 F.2d at 301.

The plaintiff, Joseph Garrett, was born October 10, 1937. His formal education terminated in 1946 on the death of his mother. He testified that he was in school on and off through the third grade and that when he volunteered for the Army he was turned down, testing having shown him to have a second grade education level. He cannot read or write, and in the words of the hearing examiner, "claimant is illiterate". His earliest work experience was on a farm with his father who was a sharecropper. Plaintiff's work activity, from childhood until November 12, 1968, which he claims as the onset of his disability, has been unskilled common labor as a furniture mover/driver, janitor in a bottling plant, and as a metal baler in a scrap yard. He testified that subsequent to the onset of his disability he attempted to work picking up paper and litter with a stick but after two weeks he had to quit. Plaintiff is married and has four children, all under eighteen (18) years of age, and that from time to time his mother-in-law stays with his family which occupies a 7-room house which he rents.

Plaintiff alleges the onset of his disability to be November 12, 1968, at which time he was injured when a refrigerator or freezer he was moving in the course of his employment fell on him. In his applications for disability benefits he complains of internal injuries, back, stomach, and kidney trouble, apparently all stemming from the 1968 accident. He was hospitalized for three days, November 28–30, 1968, for evaluation of right lower quadrant pain and a history of passing blood in his urine. The records from the Greenville Hospital System indicated finding of "Probable muscle strain superimposed upon underlying prostatitis." A small ureterocele on the left, without any significant obstruction was found but considered not to be related to the injury for which he was hospitalized. Antibiotics were prescribed, and in closing it was indicated that "No permanent disability is to be anticipated." On October 16, 1969, Dr. John Evans [1], a urologist, forwarded copies of the hospital records and urological examination to the Social Security Administration, and indicated that plaintiff;

> [H]as a prostatitis but I am unable to account for all his symptomatology based on this alone. Because of this he was referred to Dr. Keith Blincow. I do not have copies of Dr. Blincow's reports available.

There is a notation on the hospital records which indicates that on May 6, 1969, copies were sent to Dr. Blincow. *Dr. Blincow's reports are not a part of the record before this court.*

On October 17, 1969, a report was submitted by Dr. R. E. Gregory [2] which summarized visits to him by the plaintiff commencing on January 14, 1969 when plaintiff was seen for an upper respiratory infection, bronchitis. On February 27, 1969 plaintiff was seen for the second time, complaining of dizziness which Dr. Gregory interpreted to be labyrinthitis, (an infection of the inner ear) and was seen on July 21, 1969 with the same condition. At that time he was diagnosed as being "mildly diabetic," and placed on a diet to control that condition. In the closing remarks to his report of October 17, 1969, Dr. Gregory stated his diagnosis to be, "Mild diabetes mellitus and recurrent labyrinthitis."

In a report dated February 20, 1970, to the South Carolina Vocational Rehabilitation Department, Dr. Evans stated that plaintiff ". . . has prostatitis. The amount of discomfort that he has

1. Dr. John S. Evans, M.D., is a board certified Urologist admitted to practice in 1964.

2. Dr. Reginald E. Gregory is a general practitioner, and was admitted to practice in 1950.

had, has been out of proportion to my physical findings." He went on to state that he had not seen the plaintiff since September 2, 1969.

On February 9, 1971, a comprehensive report was submitted by Dr. W. S. Hawkins, M.D.,[3] to whom plaintiff had been referred by the South Carolina Vocational Rehabilitation Department. Based on his findings, Dr. Hawkins diagnoses were:

(1) Lumbosacral back strain, mild, in the absence of objective evidence of serious functional impairment.

(2) No objective evidence of cardiovascular or neurologic disorders.

(3) Strongly positive tuberculin reaction, history of, with treatment with anti-tuberculus drugs in the presence of negative chest x-ray.

(4) Probable diabetes mellitus, mild.

The following comments from Dr. Hawkins "Summary" are also significant:

*Present clinical data do not indicate findings which substantiate the applicant's numerous complaints.* The fasting blood sugar of 120 mgs.% is certainly consistent with mild diabetes mellitus, but by no means is diagnostic. If Mr. Garrett has diabetes, it most certainly is mild. The question of diabetic neuropathy arises, and of course, cannot be excluded as a cause of the paresthesias complained of. Nevertheless, there are no neurologic abnormalities demonstrated.

Musculo-Skeletal examination reveals a *relatively stiff lumbosacral spine which was difficult to evaluate.* There is a history of injury, and he is reported to have been told by Dr. Robert Grier, orthopedist, that he had a "bad disc" in May of 1970. *He has been wearing a back brace consistently, but has not returned to Dr. Grier.* Again no neurological abnormalities were evident to indicate any cord or peripheral nerve damage. He was seen to move about the office, get on and off the table well, but was observed to walk with a slightly stiff gait.

Cardiovascular examination is negative. The symptoms do not suggest organic heart disease. *The history of dizziness and "blank out spells" cannot be explained on the basis of the present examination.* They may well be of psychophysiological origin. [Emphasis added].

*There is no report in the record before this court of any examination by Dr. Grier,* and no indication that Dr. Hawkins ever saw or was aware of any of the earlier medical reports which might have shed some light upon the questions which appeared to give Dr. Hawkins some concern. It should be noted also that at the hearing on May 19, 1971, the hearing examiner was aware that the plaintiff was wearing a back brace at the hearing, and Dr. Grier's name was mentioned several times.

█ In his findings, the hearing examiner did in fact conclude that plaintiff had medically determinable impairments which included *"lumbosacral back strain,* strong positive tuberculin reaction and probable diabetes mellitus." However, in the next paragraph he stated:

2. Claimant's lumbosacral back strain is mild. His strongly positive tuberculin reaction is by history only, with treatment with anti-tuberculus drugs in the presence of negative chest x-ray, and his probable diabetes mellitus is mild. In combination, these impairments would preclude the claimant from engaging in heavy common labor which would require heavy lifting, constant stooping or bending. They would not preclude light or sedentary work.

There is no mention in his findings of the "recurrent labyrinthitis" diagnosed by Dr. Gregory as late as October 17, 1969 and which plaintiff still complained

---

3. Dr. William S. Hawkins, M.D., is a specialist in Internal Medicine, admitted to practice in 1949.

of (dizziness) at the hearing and when examined by Dr. Hawkins in early 1971. This is of particular concern to the court in view of the fact that after concluding that plaintiff could not return to his former employment due to his medically determinable impairments (thereby shifting the burden of proof to the Secretary to show other employment, *Meneses,* supra) the hearing examiner went on to state:

> . . . *Claimant could* however *drive a truck or smaller vehicle,* such as driving a small delivery truck or car making 'deliveries for a drug store or similar establishments. *He could also work as a taxi driver or chauffeur.* These are light or sedentary work activities. Claimant could work as a janitor at a school which is also light work. There are other types of work activity which the claimant could perform with a short on-the-job demonstration, such as elevator operator in a store, hotel or similar establishments or a parking lot attendant. Claimant could have so worked at any of these light or sedentary work activities at all times from November 12, 1968, to the present, with the exception of a short period when he was hospitalized and undergoing treatment.

Such findings simply are not supported by the record and appear to either discount or ignore the complaints of dizziness.

No vocational expert was called to testify at the hearing, and there is nothing whatsoever in the record to substantiate the hearing examiner's assertions as to the type of work the plaintiff could do. Additionally, it is obvious that the hearing examiner gave little or no weight to the plaintiff's subjective symptoms which plaintiff testified to at the hearing.

While it is clear that the weighing of evidence is the province of the Secretary, and the Secretary and not the courts is charged with resolving conflicts in the evidence, Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964), it is also clear that a plaintiff's subjective symptoms are one of the four elements which must be considered in determining whether a claimant is disabled, Hicks v. Gardner, 393 F.2d at 302, and that to disregard a claimant's subjective symptons is error. DePaepe v. Richardson, 464 F.2d 92, 99 (5th Cir. 1972). As was noted in Bittel v. Richardson, 441 F.2d 1193, 1195 (3rd Cir. 1971), a subjective determination of a claimed disability is required by 20 C.F. R. § 404.1502. Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability. *Bittel,* supra, at 1195.

The hearing examiner has a duty of impartiality. Just as a United States Judge is not the Federal Government's representative, the hearing examiner is not the Secretary's advocate, but is given authority as *an impartial trier of fact.* This was made clear in Sellars v. Secretary of H. E. W., 458 F.2d 984 (8th Cir. 1972), when the court, after quoting from the Secretary's own regulations published as 20 C.F.R. § 404.927, and citing Richardson v. Perales, 402 U. S. 389, 410, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), stated: "The essence of the examiner's duty under the Act, as required by this regulation [20 C.F.R. § 404.927] is that he *fully* and *fairly* develop the facts." [Emphasis the court]. This holding was quoted with approval in *Garrett,* supra, 471 F.2d at 603. The absence from the record in this case of two (2) medical reports made during the critical period (reports by Dr. Grier and Dr. Blincow) do not comport with a full, fair, and impartial development of the facts. While it is true that plaintiff was represented by counsel in this case at the hearing stage and beyond, and that counsel should have insisted that such reports be made a part of the record if relevant, such fact does not relieve the hearing examiner of his duty to fully and fairly develop all of the facts.

Similarly, a vocational expert should have been present at the hearing to assist the hearing examiner, particularly in view of the fact that the burden of showing other employment in which the plaintiff could engage was upon the Secretary. The unsupported speculation of the hearing examiner as to what other work plaintiff could perform does not constitute substantial evidence. His findings in this regard are particularly suspect in light of his assertion that plaintiff could perform several jobs involving driving vehicles when viewed in light of plaintiff's asserted (and verified) episodes of dizziness. Pertinent here is the comment in *Orzel v. Finch*, 445 F.2d 150 (7th Cir. 1971) wherein the court stated:

> Thus, we find that the *hearing examiner relied too heavily on the physician's statements. A vocational expert could supply information concerning Miss Orzel's capabilities in light of the conditions in the labor market.* In fact, in many cases reviewed by the federal courts since the 1967 Amendments, the testimony of vocational experts was part of the administrative record . . . . We do not hold that the testimony of vocational experts is required in all cases or even in this one. ·*We merely suggest that a vocational expert can supply such information concerning claimant's ability to perform "substantial gainful" employment, which is fatally absent in this case. Id.* at 154 (citations omitted) [emphasis added].

In *Orzel*, it is not clear whether or not the plaintiff was represented by counsel at the hearing stage. A far stronger statement was made in *Garrett v. Richardson*, 471 F.2d 598 (8th Cir. 1972), a case in which the claimant was not represented by counsel at the administrative hearing. The court there stated:

> No expert in vocational training was ever called to testify in this case, nor was any report submitted, nor was any testimony elicited concerning what type of "light or moderate work" appellant could perform with his edu-

cation, his age and his work experience that would be commensurate with substantial gainful activity. In such circumstances, it cannot be said that a finding of no disability is supported by substantial evidence. While the burden is upon the claimant to establish his disability, *once medical reports have been introduced substantiating a medical impairment, and the claimant having testified that he is unable to work, it would be beyond the realm of reason to further require a claimant,* who is not represented by an attorney, who is sixty years of age with a third grade education, and who if not financially distraught, would not be asserting a claim for benefits in the first place, *to produce a vocational counselor* to testify that there are no jobs in the national economy which he can perform. *The burden of producing such a person must rest with the hearing examiner and in the absence of substantial evidence from other sources hearing directly on the issue of "substantial gainful activity," the testimony of a vocational counselor is essential for the affirmance of an examiner's findings. Id.* at 603, 604 [emphasis added].

The Secretary, obviously recognizing this deficiency in the present case, asserts that under the 1967 Amendments the Secretary may take administrative notice of jobs the plaintiff can do, citing *Brown v. Finch*, 429 F.2d 80 (5th Cir. 1970); *Breaux v. Finch*, 421 F.2d 687 (5th Cir. 1970); *Floyd v. Finch*, 441 F. 2d 73 (6th Cir. 1971); *Chavies v. Finch*, 443 F.2d 356 (9th Cir. 1971). It should be initially noted, that it · is *Breaux* which the other three cases cite as authority for this position. *Garrett v. Richardson*, 471 F.2d 598, quoted supra, a 1972 Eighth Circuit decision, by its unequivocating language makes the continuing viability of *Breaux* and progeny immediately suspect, although it does not specifically overrule *Breaux*. In *Breaux*, the plaintiff suffered only a 20% disability and the court found that there was clear evidence of this fact. After

holding that it was proper for the Secretary to take administrative notice of the fact that light work *existed* in the national economy, the court went on to state:

.  .  . If the nature of Breaux's disability limited the scope of light work which he could perform, his argument [that testimony of a vocational expert was necessary] would be much more persuasive. However, he is perfectly capable of engaging in an infinite variety of jobs which can be classified as light work and it was not necessary for the Secretary to produce evidence of the obvious fact that light work exists in the national economy. *Breaux,* 421 F.2d at 689–690.

*Brown,* supra, also found substantial evidence in the record showing that plaintiff could engage in light work, and it appears that what was held in *Brown* was that a vocational expert is not needed to merely catalog jobs once there is substantial evidence of plaintiff's ability to engage in jobs of a light and sedentary nature. Such is clearly not the situation in the present case. The Ninth Circuit case of Chavies v. Finch, 443 F. 2d 356 (1971) is clearly not on point with the present case. In *Chavies,* a vocational expert was present and did testify at the hearing. In addition, medical experts had also testified that the plaintiff in that case could perform light work. In Floyd v. Finch, supra, it is not clear whether a vocational expert testified at the hearing. Assuming that there was no such testimony, the court clearly held that the Secretary could take administrative notice that light work *existed* in the national economy, citing *Breaux,* supra. Once again however, there was medical testimony in the record that, "[T]he use of his extremities and of his back should be satisfactory for *anything except heavy lifting.*" 441 F.2d 73 at 75. There is no testimony of such a nature in the record presently before this court.

Only one further point need be made on this question. The Secretary has cited no opinions from this circuit to support his position, and the court by its own research has found none. In view of this, as well as the foregoing discussion, the Secretary's position is without merit.

■ The record in this case does not support the Secretary's motion for summary judgment nor the plaintiff's prayer for reversal of the Secretary's administrative determination. The absence from the record of the known medical reports of Doctors Grier and Blincow deprive both the Secretary and this court of possibly vital evidence upon which a decision could be based. Similarly, the complete absence of testimony by a vocational expert, when coupled with a total absence of any evidence, much less substantial evidence, as to plaintiff's ability or inability to engage in other substantial gainful activity, makes it essential that this case be remanded to the Secretary for further findings.

■ Not only should the Secretary be held to an exacting standard as to his findings of all facts essential to his conclusion of ineligibility, he must comply with the proper legal standards in reaching his findings. As was stated in Branham v. Gardner, 383 F.2d 614, 626 (6th Cir. 1967), "[t]he facts must be evaluated by the administrator in the light of correct legal standards to entitle the administrative findings to the insulation of the substantial evidence test."

In Flake v. Gardner, 399 F.2d 532 (9th Cir. 1968)[4], the court held that:

Even though the findings be supported by substantial evidence, the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Id.* at 540.

The apparent failure of the Secretary to give any consideration to the plaintiff's

---

4. *Cf.* Dixon v. Gardner, 406 F.2d 1035, 1037 (4th Cir. 1969). See also Garrett v. Richardson, 471 F.2d 598, 604 (8th Cir. 1972) (which also sets out in detail at page 599 the legal standards to be applied) ; Knox v. Finch, 427 F.2d 919, 920 (5th Cir. 1970).

subjective symptoms constitutes such a lack of compliance with proper legal standards. If the hearing examiner did consider these subjective symptoms but found the plaintiff's testimony self-serving or otherwise not credible, he should have so stated. The record is barren on this subject.

This case is therefore remanded to the Secretary for further findings in accordance with this order and for compliance with proper legal standards.

And it is so ordered.