Delma PADILLA, Plaintiff,

v.

Margaret M. HECKLER, Secretary of
Health and Human Services,
Defendant.

No. 85 CIV. 6326 (PKL).

United States District Court,
S.D. New York.

Sept. 9, 1986.

Harlem Legal Services, Inc., Ishmael Lahab, New York City, of counsel, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Donna H. Lieberman, Sp. Asst. U.S. Atty., Annette H. Blum, Regional Atty., Region II, Kevin J. Windels, Sp. Asst. Regional Atty., Office of the Gen. Counsel, Dept. of Health and Human Services, of counsel.

## OPINION

LEISURE, District Judge:

This action is brought under sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff Delma Padilla ("Padilla" or "claimant") seeks a review of a final determination by the Secretary of Health and Human Services (the "Secretary"), denying claimant's application Supplemental Security Income ("SSI") benefits based on disability. The parties have cross-moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

## FACTUAL BACKGROUND

On March 7, 1984, Padilla filed for SSI benefits, claiming disability since April 23, 1982, due to hypertension, vaginal problems and a colostomy. See Transcript of Administrative Proceeding ("R.") 35, 58. Her application was denied initially, R. 47, and again upon reconsideration. R. 53. She was then granted a hearing before Administrative Law Judge ("ALJ") Roy P. Liberman ("Liberman") that was held on March 12, 1985. Following that hearing, ALJ Liberman rendered a decision in which he found claimant ineligible for SSI benefits. See R. 12.

Padilla is 41 years old and communicates mostly in Spanish. She is a high school graduate, with 3 years of nursing school in Puerto Rico, where she worked as a nurse until 1969. In her most recent employment, she performed home care for an elderly woman from 1977 to 1979. Padilla's duties in that job included bathing the woman, lifting her out of bed, pushing her around in a wheelchair, helping her to use the bathroom, and providing her meals. See R. 9, 19–25.

At the hearing before the ALJ, claimant testified that she stopped working in 1979 because she hurt her back while lifting the woman she was caring for. See R. 22. As previously noted, she alleged disability since April 1982, due to hypertension, vaginal problems and a colostomy. She also claimed to be suffering from constant diarrhea, abdominal and chest pains, dizziness, and asthma. See R. 25–26. Padilla testified that she suffers from nerves, "sees things moving around the house," and hears voices which predict the future. R. 31. In addition, she testified that she currently requires the assistance of a home care nurse, who is provided by welfare. See R. 29.

Between May and August 1982, Padilla was hospitalized at St. Luke's Hospital. At the hospital, she was treated for carcinoma of the cervix and a rectal fistula, and underwent a small bowel resection, an ileostomy and a hysterectomy. See R. 10.

In April 1984, claimant was examined by Dr. Edmond B. Balinberg. Dr. Balinberg found the claimant to have hypertension, no respiratory distress and a regular heartbeat with a slight murmer. He indicated that claimant's abdominal pain was of an unclear etiology. *See* R. 96–97.

In September 1984, another physician, Dr. Gerald Leventhal, noted that claimant had a systolic murmer, a well-healed scar from a colostomy, and a distended abdomen. *See* R. 109–10. Dr. Leventhal also performed chest X-rays, an EKG and a pulmonary function test; these tests did not disclose any abnormality, except for "a mild, chronic obstructive pattern compatible with [the claimant's] chronic smoking." R. 110.

Padilla was hospitalized in December 1984 for chest pains. She underwent cardiac catheterization, which demonstrated normal coronary arteries. *See* R. 157–58. The hospital's report noted that there is "no cardiac basis for this woman's symptoms." R. 158.

In a note dated January 18, 1985, Padilla's treating physician, Dr. Jaime J. Portalatin, stated that he treats claimant for bronchial asthma, angina and gastroenteritis. *See* R. 124. Dr. Portalatin provided no clinical findings or treatment information.

In his written decision denying claimant's application for benefits, the ALJ found that the claimant's testimony was not credible and that claimant's "subjective complaints" should accordingly be given "little weight." R. 11. In this regard, the ALJ noted the claimant's insincere demeanour, inconsistent statements as to medical history and false testimony regarding her smoking. *See* R. 11. The ALJ also pointed out that during her hearing, the claimant did not appear to be in pain. *See* R. 10. Ultimately, the ALJ found that the claimant was not "disabled" within the meaning of the Act, and had "no limitation on her ability to engage in any function of her past relevant work providing home care for an elderly woman." R. 11.

## DISCUSSION

■ A claimant seeking SSI benefits is considered disabled under the Act if the claimant is unable "to engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). In assessing a claim of disability, the Secretary must consider objective and subjective factors, including: (1) objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain and disability testified to by the claimant or others; and (4) the claimant's educational background, age and work experience. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980). The Secretary must consider the total effect of an individual's impairments on his ability to perform gainful work. *Dixon v. Heckler*, 589 F.Supp. 1494, 1508 (S.D.N.Y.1984), *aff'd*, 785 F.2d 1102 (2d Cir.1986).

Absent legal error by the Secretary, a decision cannot be set aside if it is supported by substantial evidence. *Bluvband* 730 F.2d 886, 891 (2d Cir.1984); *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978).

■ The ALJ who conducts a hearing on a claimant's eligibility for disability benefits has a duty to develop the factual record and inquire fully into the matters at issue. *See Richardson v. Perales*, 402 U.S. 389, 400, 410, 91 S.Ct. 1420, 1426, 1431, 28 L.Ed.2d 842 (1971); 20 C.F.R. § 404.944. This obligation exists not only when the claimant is pro se, *see Rosa v. Weinberger*, 381 F.Supp. 377, 381 (S.D.N.Y.1974), but also when the claimant is represented by counsel. *See Garrett v. Richardson*, 363 F.Supp. 83, 90 (D.S.C.1973). The hearing

examiner is not the Secretary's advocate; his fundamental duty is to preside as an impartial trier of fact. *Id.*

In evaluating disability claims, the Secretary utilizes a five-step sequential evaluation process. *Bowen v. City of New York,* — U.S. —, 106 S.Ct. 2022, 2025, 90 L.Ed.2d 462 (1986); *see Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). The United States Supreme Court has recently summarized this process as follows:

> The first step determines whether the claimant is engaged in "substantial gainful activity." If he is, benefits are denied. If he is not engaged in such activity, the process moves to the second step, which decides whether the claimant's condition or impairment is "severe,"—*i.e.* one that significantly limits his physical or mental ability to do basic work activities. If the impairment is not severe, the benefits are denied. If the impairment is severe, the third step determines whether the claimant's impairments meet or equal those set forth in the "Listing of Impairments" (listings) contained in subpart P, appendix 1, of the [Secretary's] regulations. The listings consist of specified impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the listed impairments, he is conclusively presumed to be disabled and entitled to benefits. If the claimant's impairments are not listed, the process moves to the fourth step, which assesses the individual's "residual functional capacity" (RFC); this assessment measures the claimant's capacity to engage in basic work activities. If the claimant's RFC permits him to perform his prior work, benefits are denied. If the claimant is not capable of doing his past work, a decision is made under the fifth and final step whether, in light of his RFC, age, education, and work experience, he has the capacity to perform other work. If he does not, benefits are awarded.

*Id.* 106 S.Ct. at 2025 (citation of regulations omitted).

■ In general, the claimant bears the burden of proving that his impairment is severe enough to preclude him from doing his past work and that the impairment significantly limits his ability to do basic work activities. *See Bluvband v. Heckler,* 730 F.2d at 891. If the claimant satisfies this initial burden, then a finding of disability is required unless the Secretary can demonstrate the existence of other work that the claimant could perform. *See id.*

In this case, the ALJ's findings did not correspond precisely to the five-step analysis described above. It is clear that ALJ Liberman found that Padilla had not engaged in substantial gainful activity since 1979. *See* R. 11. It is also clear that the ALJ found that the medical evidence failed to establish that Padilla suffered from an impairment listed in "Appendix 1" of the Secretary's regulations. *See* R. 11. It is not entirely obvious, however, whether the ALJ found that the claimant's impairment, even though not listed, could be considered severe. ALJ Liberman did expressly find, nonetheless, that Padilla had "the residual functional capacity to perform all work functions." R. 11. Such wording implies that the ALJ did not find the existence of a severe impairment, *i.e.,* one which significantly limits the claimant's physical or mental ability to do basic work activities. *See Romero v. Heckler,* 586 F.Supp. 840, 845 (S.D.N.Y.1984); *see also Cabrera v. Heckler,* 85 Civ. 2624, slip op. at 8–9 (S.D. N.Y. August 7, 1986) [Available on WESTLAW, DCTU database] (Keenan, J.) (claimant's impairment should be found non-severe only if it involves a slight or minor abnormality). Thus, the ALJ's decision can reasonably be construed as having denied SSI benefits to Padilla in part because he found that the claimant's impairment was not severe.[1]

---

1. The ALJ's failure to state explicitly his findings under steps one through five of the sequential approach required for the analysis of disability claims, *see Bowen,* 106 S.Ct. at 2025, creates an unnecessary impediment to effective judicial review. *Cf. Sierra Club v. U.S. Army Corps of Engineers,* 772 F.2d 1043, 1051 (2d Cir.1985) ("To permit intelligent judicial review

In any event, there is no question that ALJ Liberman did expressly find that Padilla was not disabled within the meaning of the Act because of her ability to perform "her past relevant work providing home care for an elderly woman for two years." R. 11. In addition, the ALJ never reached the question of whether the Secretary had proven the existence of other work that the claimant could perform, apparently because the ALJ's determination that Padilla could perform her prior work eliminated the need for further inquiry.

Given the nature of the ALJ's findings, this Court's review will be limited to the ALJ's determination that the claimant does not have a severe impairment, and that she retains the residual functional capacity to perform her past work.

### A. Existence of Severe Impairment

In evaluating the severity of Padilla's impairment, ALJ Liberman placed considerable emphasis on the available medical evidence, which has already been summarized. This evidence, taken as a whole, tends to suggest that the treatment Padilla has been given for a variety of physical conditions has left her in considerable discomfort but not incapacitated. In addition, claimant's treating physicians have consistently been unable to link Padilla's abdominal and chest pains to any physiological abnormality. See R. 97 (etiology of claimant's abdominal pain unclear); R. 158 ("no cardiac basis for this woman's symptoms").

■ The record in this case presents no sound reason for disturbing ALJ Liberman's determination that the available medical evidence fails to demonstrate the existence of a severe, continuing physical impairment. Claimant's counsel argues, however, that Padilla's subjective testimony of disabling pain should by itself compel a finding of disability. Although this Court has, on prior occasion, suggested that an ALJ commits error by rejecting a claim of disabling pain solely on the grounds that objective, clinical findings do

not establish a cause for such pain, see Rivera v. Secretary of HEW, 513 F.Supp. 194, 199 (S.D.N.Y.1981), such an absolute approach has since been disapproved both by the Second Circuit and by Congress. In Gallagher v. Schweiker, 697 F.2d 82 (2d Cir.1983), the Court explained that an ALJ was not required to consider subjective testimony of disabling pain unless it had already been established that the claimant suffered from a physical or mental impairment capable of diagnosis by medically acceptable clinical and laboratory techniques. See 697 F.2d at 84. Shortly after the Second Circuit's decision in Gallagher, Congress amended the Act's definition of disability to include the following language:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section [of the Act]; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence required to be furnished under this paragraph ... would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).

Moreover, even case law that antedates Gallagher recognized that an ALJ is entitled to discount subjective evidence of pain after examining the claimant's demeanor and other indicia of credibility. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979); Rivera, 513 F.Supp. at 199. In the instant case, ALJ Liberman found that Padilla's testimony was not credible, basing his conclusion both on the claimant's demeanor and several inconsistencies in her statements in the record. See R. 11. Under the circumstances, it would be inappropriate for this Court, reviewing a cold

an agency must indicate the basis on which it

exercised its expert discretion.").

record, to supplant an ALJ's evaluation of a disability claimant's credibility.

■ Significantly, however, ALJ Liberman did not mention Padilla's credibility when discussing her statements that she is bothered by nerves and experiences hallucinations. Rather, the ALJ noted only that the claimant "admitted that she has never had any psychiatric treatment." R. 9. This laconic analysis is disturbing on its face, since it is clear that a continuing mental impairment may, by itself, constitute disability under the Act. *See* 42 U.S. § 423(d)(1)(A).

Indeed, Padilla's counsel argues that the Social Security Disability Benefits Reform Act (the "Reform Act"), Pub.L. No. 98–460, 98 Stat. 1794, enacted by Congress in 1984, mandates remand in this case for a redetermination of plaintiff's mental impairment claim based on the Secretary's revised criteria for evaluating such claims. In section 5(a) of the Reform Act, Congress directed the Secretary to promulgate new regulations for claims involving mental impairment. *See* 98 Stat 1801. On February 4, 1985, the Secretary published the proposed regulations for such claims, *see* 50 Fed. Reg. 4,948, and the regulations became effective on August 28 of that year. *See* 50 Fed.Reg. 35,065.[2]

The Secretary's obligation to apply these new regulations retroactively is described in section 5(c)(1) of the Reform Act, which, in pertinent part, provides that:

Any determination [by the Secretary] that an individual is not under a disability by reason of a mental impairment ... made ... after the date of the enactment of this Act and prior to the date on which the revised criteria are established by regulation ... shall be redetermined as soon as feasible after the date on which such criteria are so established, applying such revised criteria.

98 Stat. 1801–02.

The Secretary contends, however, that the Reform Act's redetermination requirement is not relevant to the instant case, because Padilla's claim cannot properly be characterized as one based, even in part, on an allegation of mental impairment. In this regard, the Secretary notes that Padilla never alleged mental impairment in the administrative proceedings, was not receiving any psychiatric treatment for her purported condition, and did not submit reports from mental health professionals. Indeed, the Secretary points out, neither claimant nor her counsel ever requested a psychiatric examination so that claimant's mental condition could be properly diagnosed.

Arguably, the absence of any detailed finding by ALJ Liberman on the question of mental impairment renders section 5(c) of the Reform Act inapplicable, since the statute only requires redetermination of agency determinations "that an individual is not under a disability by reason of a mental impairment." 98 Stat. 1801–02.[3] Such a narrow interpretation of the Reform Act's language, however, is inconsistent with the well-settled proposition that the Social Security Act is remedial in nature and should be construed broadly. *See Marcus v. Califano*, 615 F.2d at 29; *Gold v. Secretary of HEW*, 463 F.2d 38, 41 n. 6 (2d Cir.1972).

Based on the foregoing considerations, this Court is convinced that the Reform Act requires remand of Padilla's mental impair-

---

**2.** As implemented, the new procedure for evaluating mental impairments is designed to assist the Department of Health and Human Services in: "(1) Identifying additional evidence necessary for the determination of impairment severity; (2) Considering and evaluating aspects of the mental disorder(s) relevant to [the claimant's] ability to work; and (3) Organizing and presenting the findings in a clear, concise, and consistent manner." 20 C.F.R. §§ 404.1520a(a), 416.920a(a).

**3.** On the other hand, an ALJ's failure to make findings concerning mental impairment, despite evidence in the record suggesting the possibility that the claimant may suffer from a mental disorder, arguably necessitates remand of the case, since the reviewing court has no basis for deciding whether the ALJ's finding as to mental disability was based on substantial evidence. *See Cabrera v. Heckler*, 85 Civ. 2624, slip op. at 13 (S.D.N.Y. August 7, 1986) (Keenan, J.).

ment claim for redetermination by the Secretary in accord with the revised procedures for evaluating such claims. Even if remand for this purpose were not required by the Reform Act, it would be justified by ALJ Liberman's failure, upon hearing claimant's own testimony concerning her mental condition, *see* R. 31–32, to develop the record further on this point, perhaps by suggesting a psychiatric evaluation of claimant. The obligation of an ALJ to develop a complete factual record, *see Richardson v. Perales*, 402 U.S. at 410, 91 S.Ct. at 1431, does not dissipate entirely merely because a claimant is represented by counsel. *See Garrett*, 363 F.Supp. at 90. Obviously, this Court is not suggesting that SSI benefits should rain like pennies from heaven every time a claimant has a vision. Nonetheless, the need for some form of mental examination in response to this particular claimant's comments is hardly an extraordinary notion. Indeed, the Secretary now recognizes that a "mental status examination . . . will ordinarily provide the needed information" in evaluating a claim of mental impairment. *See* 20 C.F.R. § 404.1520a(b)(1). Under the circumstances, it is apparent that good cause has been shown for this Court to exercise its authority, conferred by section 205(g) of the Act, to remand this case accompanied by an order that additional evidence be taken before the Secretary. *See* 42 U.S.C. § 405(g).

Finally, it should be noted that the Secretary's reconsideration of Padilla's possible mental impairment, even if it does not lead to the conclusion that such an impairment is severe, may affect the Secretary's overall conclusion concerning the severity *vel non* of Padilla's impairment or impairments. Within the past two years, the Social Security Act has been amended, *see* 42 U.S.C. § 423(d)(2)(C), to require that the Secretary consider the combined effect of impairments that individually may be non-severe, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability.

*See Dixon v. Heckler*, 785 F.2d at 1102, 1107 (2d Cir.1986). Thus, upon remand, the Secretary should consider whether claimant's mental condition, taken in combination with the obvious discomfort (if not disabling pain) she suffers as a result of numerous medical procedures, constitutes a "medically severe combination of impairments." 42 U.S.C. § 423(d)(2)(C); *see Maisch v. Heckler*, 606 F.Supp. 982, 993 (S.D.N.Y.1985) (where record contained evidence tending to ·show that the claimant had some sort of mental disability, the ALJ had an obligation to assess claimant's mental condition in connection with his physical condition).[4]

### B. Vocational Factors

█ Recent decisions by Judge Lasker of this Court and by the Second Circuit indicate that the Social Security Act does not permit the Secretary to deny a disability claim without first considering the claimant's age, education, employment experience, ability to return to work, or other vocational factors. *See Dixon v. Heckler*, 589 F.Supp. 1494, 1502–07 (S.D.N.Y.1984) (Lasker, J.) (preliminarily enjoining use of severity regulation under which the Secretary could deny disability claims without consideration of vocational factors if the claimant failed to establish that his impairment was severe), *aff'd*, 785 F.2d 1102, 1107 (2d Cir.1986) (Congress apparently intended that the Secretary give at least some consideration to vocational factors in determining whether or not claimant's impairment was severe); *Ramirez v. Heckler*, 84 Civ. 0799, slip op. at 7 (S.D.N.Y. July 18, 1986) (Lasker, J.) (rejecting the Secretary's argument that vocational factors do not have to be considered if claimant is denied disability benefits because of ability to perform past relevant work). In Judge Lasker's words, "[t]he disability statute requires consideration of the combined effect of an individual's impairment and his age, education, work experience, and ability to

---

4. In deciding whether Padilla has a severe impairment, the ALJ should also, on remand, give adequate consideration to vocational factors such as claimant's work experience and ability to return to her prior work. *See generally* discussion, *infra*, at 487–88.

return to prior work." *Dixon*, 589 F.Supp. at 1508–09. Furthermore, "this statutory requirement ... applies to the disability evaluation process generally." *Ramirez, supra*, slip op. at 8. Thus, the Secretary "must give consideration to vocational factors before a denial of a disability claim is made." *Id.* at 9.

In the instant case, although the claimant was denied SSI benefits on the grounds that she was not "disabled" within the meaning of the Act, *see* R. 11, that determination was made without proper consideration of vocational factors. Although ALJ Liberman made passing reference to Padilla's age, education and prior work experience, *see* R. 9, he failed entirely to analyze the impact of those factors on Padilla's residual capacity to perform work-related functions. Yet ALJ Liberman found that Padilla possessed such residual capacity, just as he found that her "past relevant work performing home care for an elderly woman was not precluded by her impairments." R. 11.

The extent to which ALJ Liberman's truncated analysis may have distorted his ultimate conclusions can be demonstrated by examining the effect that a proper consideration of vocational factors might have had on the ALJ's evaluation of Padilla's disability claim. For example, it is undisputed that Padilla's duties as a home care attendant included lifting the elderly woman who was in her charge. *See* R. 23 (claimant's testimony); R. 9 (ALJ's findings). Claimant's residual functional capacity assessments, however, clearly state that Padilla's *maximum* lifting capacity was limited to fifty pounds, and that she could frequently lift and carry no more than twenty five pounds. *See* R. 101, 103; *see also Cabrera v. Heckler*, 85 Civ. 2624, slip op. at 9 (S.D.N.Y. August 7, 1986)

(Keenan, J.) (criticizing ALJ's finding that claimant retained ability to perform past work as a sewing operator, where evidence clearly showed that claimant's arthritis prevented her from using the joints and limbs needed to perform in that vocation). Moreover, these assessments, each conducted five years after Padilla's work in home care ended in 1979, are entirely consistent with the claimant's own testimony that she left her home care position because she injured her back while lifting the woman she cared for, and then "could not lift her after that." R. 23. Although ALJ Liberman mentions this testimony, he does so without comment, notwithstanding such testimony's obvious relevance to the question of whether Padilla could actually return to her prior work. The unavoidable inference is that the ALJ found the claimant able to perform her prior work while ignoring uncontroverted evidence that she could no longer physically perform the tasks included in such work. When a denial of SSI benefits is predicated on an ALJ's abject failure to consider undisputed, relevant evidence, it cannot reasonably be said that such a decision is based on substantial evidence. *See Cabrera, supra*, 85 Civ. 2624, slip op. at 13; *cf. Richardson v. Perales*, 402 U.S. at 401, 91 S.Ct. at 1427 (substantial evidence "means such *relevant* evidence as a reasonable mind might accept as adequate to support a conclusion") (emphasis added).

Accordingly, this Court holds that ALJ Liberman's decision that Padilla possessed the continued capacity to perform her prior work was not unsupported by substantial evidence and was impermissibly based on the ALJ's unlawful failure to include the consideration of vocational factors in his analysis of Padilla's disability claim.[5]

---

5. The ALJ's finding that Padilla was not disabled within the meaning of the Act because of her ability to perform her past work concerns the Court for another reason. As ALJ Liberman noted, Padilla's job performing home care for an elderly woman was apparently "off the books." *See* R. 9; R. 24. This "off the books" employment, however, is precisely the sort of work that the ALJ found the claimant physically able to perform. Thus, the Secretary's decision in this case arguably stands for the proposition that an unhealthy individual's ability to participate in the underground economy is, by itself, sufficient grounds for the denial of disability benefits. The invidiousness of an administrative policy that incorporates such a proposition is readily apparent.

## CONCLUSION

The ALJ's decision in this case cannot withstand judicial review. The ALJ failed to explore claimant's possible mental impairment, as well as the effect of such impairment on claimant's overall ability to perform basic work activities. The ALJ also failed to give adequate consideration to vocational factors before denying disability benefits to the claimant. The overall insufficiency of the ALJ's decision makes this case appropriate for remand. *See Hirsch v. Heckler,* 613 F.Supp. 267, 271 (S.D.N.Y.1985); *see also Ferraris v. Heckler,* 728 F.2d 582, 588 (2d Cir.1984) (on remand, ALJ directed to make more specific findings regarding claimant's work skills and their transferability).

Accordingly, the decision of the Secretary is reversed and the case is remanded to the Secretary for reconsideration.

SO ORDERED.